SCHOOL DISTRICT NO. 20, COUNTY OF DAWSON, APPELLANT, V. COMMISSIONER OF LABOR, APPELLANT, AND HOWELL G. OLDHAM, APPELLEE.

305 N.W.2d 367

Filed May 1, 1981. No. 43354.

James B. Gessford of Perry, Perry, Witthoff & Guthery for appellant school.

Paul L. Douglas, Attorney General, and Jerold V. Fennell for appellant Commissioner.

Richard G. Kopf of Cook & Kopf, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

Defendant Dr. Howell G. Oldham (Oldham) applied for and was awarded unemployment compensation benefits under the Employment Security Law. Upon redetermination, a Department of Labor claims deputy found that Oldham was disqualified from receiving benefits for 7 weeks, under Neb. Rev. Stat. § 48-628(a) (Reissue 1978), because he resigned his employment "voluntarily . . . without good cause." Oldham appealed to the appeal tribunal. Following a

hearing, the appeal tribunal found that Oldham did not leave his employment voluntarily, but was discharged. The plaintiff, School District No. 20, County of Dawson (the Gothenburg Public School District), and the defendant Commissioner of Labor (Commissioner) appealed to the District Court for Dawson County, which affirmed and awarded Oldham attorney fees for the appeal. The Gothenburg Public School District appeals to this court, assigning as error the finding that Oldham resigned involuntarily or with good cause, and arguing that upon de novo review this court should find to the contrary. The Commissioner appeals solely on the issue that the District Court wrongly awarded Oldham attorney fees without statutory authority to do so. We affirm in part and reverse in part.

An appeal under the Employment Security Law, Neb. Rev. Stat. §§ 48-601 to 48-669 (Reissue 1978), must be heard by the District Court de novo on the record, although either party may offer additional evidence after proper notice. On appeal this court must also consider the cause de novo on the record. *Powers v. Chizek*, 204 Neb. 759, 285 N.W.2d 501 (1979); *Glionna v. Chizek*, 204 Neb. 37, 281 N.W.2d 220 (1979).

For 10 years Oldham served as superintendent of the Gothenburg Public School District. Each year in March or April the school board voted on whether to reelect the district administrators, including the superintendent, for the coming year. Reelection required an "aye" vote by at least three school board members, assuming all six were present and voting.

On February 12, 1979, Oldham and all six members of the school board attended a regularly scheduled school board meeting. After the public portion of the meeting, the school board went into executive session. During this session, France, the school board president, dismissed everyone from the room except Oldham and the school board members and initiated a conversation.

Although the testimony as to the precise language used in the conversation is slightly conflicting, there is no doubt of its substance and import. Oldham testified that France told him: "'Dr. Oldham, I feel I should inform you it is extremely doubtful that you would get a majority vote for reelection for Superintendent of Schools for the coming year.'" France and Buddenberg, a school board member present at the meeting, testified that it was to the effect that Oldham possibly or probably would not receive a majority vote for reelection as superintendent. Oldham told the school board he would like to remain superintendent for another year so that, upon reaching age 55, he could sell his home in Gothenburg with more favorable tax consequences and his son could graduate from the Gothenburg High School. The other witnesses agreed that Oldham told the school board he would like to remain for another year so that his son could graduate from Gothenburg High School. At this point, according to France, Oldham, and Buddenberg, Buddenberg asked something to the effect that: "You have all heard Dr. Oldham. Because of [his son] would you change your [mind] and let him stay another year?" No one responded. Oldham testified that he then said: "'Leonard [France], if that is the feeling of the Board, I suppose we can handle it in my office tomorrow.'" According to France and Buddenberg, Oldham offered to resign provided France would give a letter saying that it was possible he would not be reelected.

Oldham testified that he believed he had been discharged by the school board during the February 12, 1979, meeting. This belief was based in part on his experience with the school board which led him to think that they discussed his reelection before the meeting. He testified that when he had asked the school board on a couple of prior occasions whether they had discussed a particular issue he was told: "'Yes, down at the post office.'" France denied any attempt to force Oldham's resignation, saying that he intended

solely to give Oldham the opportunity to resign rather than be publicly voted out later. According to France, he took this step without consulting other board members because two school board members approached him before February 12th and told him that they would not vote for Oldham's reelection.

After the meeting, according to France's own testimony, he called Kelley Baker, attorney for the state school board, and asked whether any legal problems would result if he furnished Oldham with the above-mentioned letter. Baker responded in the negative, saying that school boards could fire superintendents at any time under state law.

The next afternoon France and Oldham met in the latter's office. Oldham presented France with a letter stating, in part: "It appears doubtful that you will secure a majority vote to be re-elected to your position as Superintendent of the Gothenburg Schools for another term.

> "Sincerely,
> /s/ Leonard France
> Leonard France, President
> Gothenburg Board of Education"

France signed the letter and, according to Oldham, remarked: "'I guess that represents the feeling of the Board of Education.'" France testified that he signed the letter only on behalf of himself and not upon authorization by the school board. Oldham then gave France a letter of resignation which said, in part: "[A]s per our verbal conversation last night at the Board meeting, I feel it to be in my best interest to inform you of my resignation."

The school board accepted Oldham's resignation on April 9, 1979.

Section 48-628(a) provides, in part, that: "An individual shall be disqualified for benefits:

"(a) For the week in which he has left work voluntarily without good cause, if so found by the Commissioner of Labor, and for not less than seven

weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner according to the circumstances in each case."

In construing this language we have said: "[T]o 'leave work voluntarily,' . . . means to intentionally sever the employment relationship with the intent not to return to, or to intentionally terminate, the employment." *Powers v. Chizek*, 204 Neb. 759, 764, 285 N.W.2d 501, 504 (1979). *MacFarland, Aplnt., v. Unemploy. Comp. Bd.*, 158 Pa. Super. 418, 45 A.2d 423 (1946), which was cited in *Powers*, defined "voluntary" as meaning an employee who left of his own volition and was not discharged. A similar definition, also quoted in *Powers*, was that "voluntary" means that the claimant, by his or her own choice, intentionally, of his or her own free will, terminates the employment. *Allen v. Core Target City Y. Prog.*, 275 Md. 69, 338 A.2d 237 (1975). See, also, 76 Am. Jur. 2d *Unemployment Compensation* § 59 at 956 (1975).

*Powers* dealt with the question of whether an employee discharged for failing to appear for work, in the belief that she had already been fired, terminated her employment voluntarily. In *Powers* the question arose because it was unclear whether the employee intended and acted to terminate her employment; in this case the question of voluntariness arises because it is unclear whether the employer intended and acted to terminate the employment relationship or, in other words, to discharge the employee.

Upon de novo review we hold that the District Court correctly found that Oldham did not terminate his employment voluntarily. The record shows that France, not Oldham, first raised the issue of Oldham's re-election. Likewise, it is undisputed that Oldham desired to remain in his position as superintendent for at least another year, and told the school board of his desire. When Buddenberg asked the school board members whether they would change their minds and let Oldham stay for one more year, no one encouraged

him to remain. It was only after this exchange that resignation was mentioned. The record is devoid of any evidence showing that Oldham had expressed a desire to resign prior to this discussion or that there was any question of misconduct, on his part, involved. It is clear that he resigned only because the school board members who had the power to reelect him intended not to do so.

Since we find that Oldham did not terminate his employment voluntarily, we need not reach the issue of whether he had "good cause" under § 48-628(a) for his actions.

Next, we turn to the issue of attorney fees. The first mention of attorney fees in this record was at the District Court level where both Oldham and the Gothenburg Public School District sought an award of attorney fees for the appeal. The court ordered the Commissioner to pay Oldham reasonable attorney fees. The Commissioner argues that the court lacked statutory authority to do so.

This court has said many times that an award of attorney fees is erroneous unless permitted by statute or uniform practice. *Suhr v. City of Seward*, 201 Neb. 51, 266 N.W.2d 190 (1978); *Warren v. Warren*, 181 Neb. 436, 149 N.W.2d 44 (1967). Neither statute nor uniform practice permits the District Court upon appeal to order an adverse party to pay attorney fees incurred by an unemployment compensation claimant.

Oldham suggests that § 48-646 authorizes such an award. That section provides, in part, that: "Any individual claiming benefits in any proceeding before the commissioner or an appeal tribunal or his or its representative or a court may be represented by counsel or other duly authorized agent, and such counsel may either charge or receive for such services a reasonable fee to be approved by the commissioner. The commissioner may, in special cases, pay such fee from the Employment Security Administration

Fund. Any person who violates any provision of this section shall be guilty of a Class II misdemeanor."

In construing a statute, we have consistently held that the language used by the Legislature should be considered to determine its intent and the words used should be given their plain meaning. *Weiss v. Union Ins. Co.*, 202 Neb. 469, 276 N.W.2d 88 (1979); *PPG Industries Canada Ltd. v. Kreuscher*, 204 Neb. 220, 281 N.W.2d 762 (1979). In plain language, § 48-646 deals with the fees charged to a claimant by his own attorney, approval of such fees by the Commissioner, and payment of fees in special cases by the Commissioner. It plainly provides that the amount of any fee charged to the client by his attorney requires approval by the Commissioner, including any fee for services in any court. The record does not show that any request was ever made to the Commissioner for approval of fees charged. Consequently, there is no showing of any special circumstances which would require payment by the Commissioner from the Employment Security Administration Fund. This statute in no way provides for an award of attorney fees by the District Court where such award was first sought on appeal by the parties and there was no issue on the appeal concerning any determination by the Commissioner as to the reasonableness of fees assessed a claimant by his own attorney or the eligibility of a claimant to have his attorney fees paid by the Commissioner under § 48-646.

We affirm the finding of the District Court that Oldham did not terminate his employment voluntarily, and reverse on the issue of attorney fees.

AFFIRMED IN PART, AND IN PART REVERSED.

McCOWN, J., concurring in part, and in part dissenting.

I concur with that part of the majority opinion which holds that the claimant did not terminate his employment voluntarily. I dissent from that portion of

the opinion disallowing the payment of a reasonable attorney fee to the defendant-claimant for the services of his attorney in the District Court.

It is clear that Neb. Rev. Stat. § 48-646 (Reissue 1978) authorizes the Commissioner of Labor to pay a reasonable attorney fee from the Employment Security Administration Fund "in special cases." That provision is disjunctive from that portion of the statute requiring that any attorney fee charged to a claimant must be approved by the Commissioner.

Where the Commissioner of Labor appeals to the courts from an award of the appeal tribunal in favor of an unemployed claimant, unless there is some provision for the payment of reasonable attorney fees for claimants, the claimants will, in all probability, have extreme difficulty in obtaining the services of counsel to protect their awards. To require a claimant to request the Commissioner of Labor to allow a reasonable attorney fee in an appeal to the courts and have the request approved or denied before entering an appearance rather than to request it in an answer filed in the District Court exalts form over substance.

In this case it is clear that the attorney fees involved are only the fees for services in the District Court, and it is clear that the claimant prayed for such fees in his answer. It is also undisputed that the Commissioner of Labor has resisted, and still resists, the allowance of any fee for the claimant's attorney, either in the District Court or in this court. There can be no reasonable doubt that the Commissioner has denied the payment of any attorney fee out of the Employment Security Administration Fund.

Unless a decision by the Commissioner of Labor denying a request for the payment of attorney fees from the Employment Security Administration Fund is unreviewable by the courts, it should be reviewed in this case because the Commissioner of Labor has denied the payment of attorney fees from the fund and even appealed to this court on the ground that such

fees are not allowable. It cannot be expected that he will reverse that decision, and his exercise of discretion ought to be reviewed now rather than later or not at all.

Where the Commissioner of Labor appeals to the courts from an award of the appeal tribunal to an unemployed claimant and loses the appeal, if there is any case which could be said to be a "special case" this one would be it.

If the majority opinion holds that under the statute a court cannot set or determine a reasonable attorney fee for services of an attorney in its own court without the prior approval of the Commissioner of Labor, I cannot believe the authority of the courts is so limited.

It is unconscionable to require a successful unemployment compensation claimant to defend his award in the District Court against an appeal by the Commissioner of Labor without an allowance of attorney fees, particularly when the appeal is unsuccessful and the Commissioner of Labor has the power to allow a reasonable attorney fee in "special cases." If the statute must be so interpreted, at least the Legislature's attention should be called to the obvious injustice.

The District Court obviously found that this case was a "special case" and quite properly awarded a reasonable attorney fee of $700. That judgment was eminently correct and should be affirmed. I would also order the payment of an additional $700 fee for services of the claimant's attorney in this court.