L. LaNelle ROBERTS, Appellant,

v.

IOWA DEPARTMENT OF JOB SERVICE, Appellee,

and

Ardan Sales Co., Employer.

No. 83–1192.

Supreme Court of Iowa.

Oct. 17, 1984.

David L. Dorff, Des Moines, for appellant.

Walter F. Maley, Blair H. Dewey and Edmund Schlak, Jr., and Deborah A. Dubik, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, SCHULTZ, and CARTER, JJ.

REYNOLDSON, Chief Justice.

This appeal involves a review of an Iowa Department of Job Service (Job Service) administrative agency decision denying the appellant, L. LaNelle Roberts, unemployment insurance benefits. Roberts has appealed the district court ruling upholding Job Service's final decision. We now reverse and remand.

Commencing May 11, 1981, Roberts was employed as a merchandise office clerk by Ardan Sales Co. (Ardan). There is substantial evidence in the record to support the finding of the appeal board that Roberts called a supervisor on October 5, 1981, that she would not be at work that day and "maybe several days." At that time her symptoms were those of a bad cold. Roberts also missed work on October 6 and 7, but did not call in on those dates. When she returned to work October 8 she was given a "warning notice" for two days of unreported absence, put on suspension, and told that an Ardan supervisor would be in touch with her the following week. The record reflects the suspension may have been motivated in part by prior tensions between Roberts and other employees.

October 10, Roberts was admitted to Broadlawns Medical Center for treatment

of a condition subsequently diagnosed as schizophrenia, paranoid type. Ardan was not aware its employee was admitted to Broadlawns. Roberts continued treatment at Broadlawns until October 12. During this period and days following, she was taking medication that affected her memory. Her physician stated during this period Roberts was "unable [to] protect her own interests at that time, in particular, she was unable to call her employer each day to report her absence."

On the afternoon of October 12, an Ardan supervisor telephoned Roberts, requesting her to come to the office the next day to discuss "what had been decided." Roberts agreed to keep the appointment but did not. She testified at the Job Service hearing she had no recollection of this telephone conversation.

On the afternoon of October 13, Roberts telephoned an Ardan representative, stating she would be back to work on the 14th to discuss her employment situation. Roberts has no recollection of this telephone call either.

October 14, Roberts was admitted again to Broadlawns Medical Center. She continued treatment at the center until November 4, 1981. During this period she was found "seriously mentally impaired" and "met [the] criteria for involuntary hospitalization including dangerousness." Ardan was still not aware of Roberts' illness.

October 16, Ardan terminated Roberts' employment. Her supervisor testified this was under a rule authorizing termination upon three days' unreported absence, specifying the dates of October 14, 15 and 16.

About October 19 or 20, a social worker telephoned Ardan to check Roberts' employment status. The social worker was told that Roberts had been terminated for a three-day unreported absence. This information was communicated to Roberts at Broadlawns. She also telephoned Ardan to determine her employment status. Ardan's representative told Roberts she could not return to her old job but there were openings in other departments for which she could be considered. Roberts testified that, based on this conversation, she believed there was no work available for her at Ardan because the other jobs required running a calculator by touch rather than by sight.

November 5, 1981, Roberts filed a claim for unemployment compensation. Ardan resisted on the ground this employee had been discharged for misconduct. A claims deputy denied Roberts' claim on the ground she voluntarily had quit her employment on October 16 by being absent without notifying her employer for three consecutive days—October 14, 15 and 16. Roberts appealed this decision to a hearing officer. The hearing officer, affirming, concluded that "the claimant did leave her employment with Ardan ... on the advice of a physician and was thereafter hospitalized. The employer was on notice that the claimant was absent from work for this reason." The hearing officer concluded Roberts was disqualified from receiving benefits because, following her hospitalization, she refused to accept jobs the employer had available for her. This refusal disqualified Roberts under section 96.5(1)(d)[1] of the Code.

Roberts filed an appeal with the appeal board. That board, in a 2–1 decision, modified and affirmed the hearing officer's rul-

---

1. Section 96.5(1)(d) provides:

 An individual shall be disqualified for benefits:

 1. *Voluntary quitting.* If he or she has left his or her work voluntarily without good cause attributable to his or her employer, if so found by the department. But he or she shall not be disqualified if the department finds that:

 d. The individual left employment because of illness, injury or pregnancy upon the advice of a licensed and practicing physician, and upon knowledge of the necessity for absence immediately notified the employer, or the employer consented to the absence, and after recovering from the illness, injury or pregnancy, when recovery was certified by a licensed and practicing physician, the individual returned to the employer and offered to perform services and the individual's regular work or comparable suitable work was not available, if so found by the department, provided the individual is otherwise eligible.

ing. Departing from the basis of the two prior rulings, the appeal board found Roberts was discharged on October 8, 1981. The board found that "[t]he claimant was well aware of the company policy that her absences from work must be reported each day. The claimant's failure to comply with the reporting requirements do show a willful disregard of the employer's interest and does constitute misconduct."

The appeal board equated the October 8 suspension with a discharge under the alleged authority of Iowa Administrative Code section 370—4.32(9).[2]

When the appeal board rejected her petition for rehearing, Roberts filed a petition for judicial review in the district court. The district court affirmed, holding Roberts' failure to report to Ardan each day of her absence due to her continuing cold was misconduct and further noting "[t]he requirement that the claimant notify the employer each day of their intended absence due to illness is an accepted employment practice."

Appealing to this court, Roberts contends there was no substantial evidence to support Job Service's finding she was guilty of misconduct on October 6 and 7. Job Service argues there was, but in any event she was disqualified from receiving benefits by her conduct on October 14 through 16, under either a misconduct or "voluntary quit" theory.

■■■ I. The principles that govern our analysis and review are well settled. We have said the Employment Security Law should be interpreted liberally to achieve the legislative goal of minimizing the burden of involuntary unemployment. *Cosper v. Iowa Department of Job Service*, 321 N.W.2d 6, 10 (Iowa 1982); *Brumley v. Iowa Department of Job Service*, 292 N.W.2d 126, 129 (Iowa 1980). In this judicial review of administrative agency action, we are limited, of course, by Iowa Code

section 17A.19(8). Our review is not de novo, but at law. *Green v. Iowa Department of Job Service*, 299 N.W.2d 651, 655 (Iowa 1980). We thus are bound by Job Service's findings of facts if supported by substantial evidence. Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *New Homestead v. Iowa Department of Job Service*, 322 N.W.2d 269, 270 (Iowa 1982). We are not bound, however, by the agency's legal conclusions, but may correct misapplications of the law. *Green*, 299 N.W.2d at 655.

II. We first explore whether there was substantial evidence to support a disqualification for benefits, based on Roberts' October 6 and 7 conduct.

Job Service has defined "misconduct" in Iowa Administrative Code section 370—4.-32(1)(a). We have quoted this definition in various opinions, including *Green*, 299 N.W.2d at 655, and have held it accurately reflects the legislative intent in the Iowa Employment Security Law, Iowa Code chapter 96. *Huntoon v. Iowa Department of Job Service*, 275 N.W.2d 445, 448 (Iowa), *cert. denied*, 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979). The burden to prove misconduct is imposed on the employer. *Cosper*, 321 N.W.2d at 11; *see* 370 I.A.C. § 4.32(4).

As we already have noted, the hearing officer and appeal board found that Roberts telephoned a supervisor, reporting she would not be at work on October 5, 1981, and "maybe several days." She did not call in on October 6 or 7. Although the hearing testimony contains a reference to a company policy authorizing termination upon three days' unreported absence, there was no evidence Roberts was aware of this policy. In any event, she did not violate this policy during the period under examination. Apparently this was the view of Ardan at the time, for the company merely

---

**2.** This rule provides:

*Suspension or disciplinary layoff.* Whenever a claim is filed and the reason for the claimant's unemployment is the result of a disciplinary layoff or suspension imposed by the employer, the claimant is considered as discharged, and the issue of misconduct must be resolved. Alleged misconduct or dishonesty without corroboration is not sufficient to result in disqualification.

suspended Roberts after giving her a warning notice for two days of unreported absence.

Job Service attempts to bootstrap this suspension into a discharge, relying on the language of Iowa Administrative Code section 370—4.32(9), quoted above. Although we have serious reservations relating to this interpretation of the rule, we do not reach that question because it has no bearing on our ultimate decision. The issue here is not discharge or suspension, which might occur for reasons other than Iowa Code chapter 96 misconduct. *See Cosper,* 321 N.W.2d at 10; *Floyd v. Iowa Department of Job Service,* 338 N.W.2d 536, 538 (Iowa Ct.App.1983). Rule 370—4.32(9) makes plain that "the issue of misconduct must be resolved."

At the time these events occurred, Iowa Administrative Code section 370—4.32(7) provided:

*Excessive absenteeism.* Excessive absenteeism is an intentional disregard of the duty owed by the claimant to the employer and shall be considered misconduct.

Following our criticism of this rule in *Cosper,* 321 N.W.2d at 9–10, it was amended as follows:

*Excessive unexcused absenteeism.* Excessive unexcused absenteeism is an intentional disregard of the duty owed by the claimant to the employer and shall be considered misconduct except for illness or other reasonable grounds for which the employee was absent and that were properly reported to the employer.

■ Under either of these rules, and in the circumstances of this case, Roberts' actions during the period of October 5 to 7 could not be considered an intentional disregard of her duty to Ardan. There is no substantial evidence in this record to support the holding of the appeal board in this regard.

III. This brings us to Job Service's fallback theories that Roberts is disqualified from benefits because of her conduct during the period October 14 through 16, 1981, either on the ground of misconduct or "voluntary quit."

■ Job Service argues it is uncontroverted that Roberts was absent from her employment October 14 to 16 without prior or contemporaneous permission from Ardan. The agency asserts she did not carry her burden of proof to establish her absence was excused. On the contrary, we find the record to establish as a matter of law that she was "unable [to] protect her own interests at that time, in particular, she was unable to call her employer each day to report her absence."

In *Huntoon,* 275 N.W.2d at 448, we wrote:

Misconduct connotes volition. A failure in good performance which results from inability or incapacity is not volitional and is thus not misconduct.

We there indicated impairment caused by alcoholism might raise an issue whether conduct resulting in discharge was voluntary. The opinion of Roberts' treating doctor relating to her inability to communicate, his diagnosis of her serious mental condition, and her history of hospitalization, all unchallenged in this record, combine to show a course of conduct during the period under scrutiny that was not volitional, but the result of inability or incapacity. There is no basis in the record to support a charge of misconduct during the period under examination.

We next turn to Job Service's claim that benefits should be withheld because Roberts "voluntarily quit." In this effort it points to Iowa Administrative Code section 370—4.25(96):

*Voluntary quit without good cause.* In general, a voluntary quit means discontinuing the employment because the employee no longer desires to remain in the relationship of an employee with the employer from whom the employee has separated. . . . The following reasons . . . shall be presumed to be without good cause attributable to the employer.

. . . .

4.25(4) The claimant was absent for three days without giving notice to employer in violation of company rule.

This administrative code provision clearly is intended to amplify Iowa Code section 96.5, which provides in relevant part:

96.5 *Causes.* An individual shall be disqualified for benefits:

1. *Voluntary quitting.* If he or she has left his or her work voluntarily without good cause attributable to his or her employer, *if so found by the department.*

(Emphasis added.)

We are not required to determine whether, in the circumstances of this case, Roberts in fact left her work voluntarily. See, however, *Quenot v. Iowa Department of Job Service,* 339 N.W.2d 624, 626–27 (Iowa Ct.App.1983). A more basic obstacle confronts Job Service.

■ Iowa Code section 96.5 deprives a claimant of benefits *if* it is found by the department that he or she has left his or her work voluntarily. Here the "final agency action," from which review must be taken, Iowa Code section 17A.19(1), contains no such finding. *See Iowa State Fairgrounds Security v. Iowa Civil Rights Commission,* 322 N.W.2d 293, 294 (Iowa 1982) ("A hearing officer's decision is merely a proposed agency decision.... Upon judicial review, the district court reviews the final agency decision, not the hearing officer's proposal."). In the absence of the requisite agency finding, we have nothing to review on the issue of "voluntary quit." Ardan made no effort, following the filing of the appeal board's decision, to obtain an enlargement of the board's findings. Only Roberts petitioned for rehearing, which was denied, the board again stating she "knew the absence reporting requirements of the employer and failed to follow the requirement, which does constitute misconduct."

We reverse and remand to Job Service for the determination of benefits.

REVERSED AND REMANDED.