WILLIAM A. PERKINS, APPELLEE, V. EQUAL OPPORTUNITY COMMISSION, APPELLEE, AND VIRGINIA YUEILL, COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLANT.

451 N.W.2d 91

Filed February 2, 1990.   No. 89-200.

Laureen Van Norman and John F. Sheaff for appellant.

Margene M. Timm, of Legal Services of Southeast Nebraska, for appellee Perkins.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Appellee William A. Perkins filed for unemployment compensation benefits under the Nebraska Employment

Security Law, Neb. Rev. Stat. §§ 48-601 et seq. (Reissue 1988). Both the claims deputy and the Nebraska Appeal Tribunal determined that Perkins voluntarily left his employment with appellee Nebraska Equal Opportunity Commission without good cause, and disqualified him from receiving benefits for a period of 8 weeks. Upon appeal of the tribunal's decision, the district court agreed that Perkins voluntarily left his employment but determined he did so for good cause, and therefore reversed the decision of the appeal tribunal. Appellant, Commissioner of Labor, assigns the district court's ruling as error. We hold Perkins did not leave his employment voluntarily, and on that basis affirm the judgment of the district court.

There is no dispute as to the material facts. Thus, only questions of law are presented, in the reviewing of which this court has an obligation to reach its conclusions independent from those reached by the district court. *State v. Wren, ante* p. 291, 450 N.W.2d 684 (1990); *Knox v. Cook,* 233 Neb. 387, 446 N.W.2d 1 (1989).

Perkins' duties as a Field Representative I were to investigate claims of discrimination. During his initial 9-month period of probationary employment, Perkins proved to be incapable of making as many investigations as his employer expected. In order to allow him more time to achieve the required level of performance, the employer extended Perkins' period of probationary employment by 3 months, the maximum extension allowable under the employer's rules. At the time it granted the extension, the employer told Perkins that if his production did not increase to meet the employer's standards, he would be discharged. There is no claim Perkins had engaged in any misconduct and no claim that he had prior to this time indicated a desire to leave his employment.

Perkins remained unable to meet the expected level of production and, shortly before the end of his extended probationary period, realized that he could not improve his performance. He thereupon concluded that quitting was preferable to being discharged, and resigned before his extended period of probationary employment would have ended. The employer's director testified he did not think that

"in three weeks [Perkins] could accomplish what had not been accomplished. . . . [I]f he had stayed with things being as they were, we would have no other choice, but to follow the personnel rules and regulations." In plain English, Perkins would be fired at the end of his extended period of probationary employment.

Section 48-628(a)(1) provides in relevant part that an employee shall be disqualified for benefits for "the week in which he or she has left work voluntarily without good cause . . . and for not less than seven weeks nor more than ten weeks which immediately follow such week . . . ."

The first question presented is whether Perkins left his employment "voluntarily," for if he did not, the question of whether he resigned for "good cause" does not arise. *School Dist. No. 20 v. Commissioner of Labor*, 208 Neb. 663, 305 N.W.2d 367 (1981).

There is no doubt but that Perkins intentionally severed his employment relationship with the Equal Opportunity Commission with the objective of not returning. In that general sense Perkins resigned voluntarily. *Montclair Nursing Center v. Wills*, 220 Neb. 547, 371 N.W.2d 121 (1985). It is equally clear, however, that had Perkins not resigned, he would have been discharged because he could not do the work required. That circumstance cannot be ignored when determining whether one has left his or her employment voluntarily, as the term is used in § 48-628(a)(1). This precise issue was considered in *School Dist. No. 20 v. Commissioner of Labor, supra*. Therein, the president of the employer school board made the employee superintendent aware it was doubtful that the board would renew his employment for the upcoming year. The superintendent advised the president and other board members present that he wanted to stay employed for another year, but received no indication that the board would change its mind. As requested, the president later gave the superintendent a letter stating it appeared doubtful that he would "secure a majority vote to be re-elected" for another term. *Id*. at 666, 305 N.W.2d at 369. The superintendent then resigned. There was no evidence that the superintendent had engaged in any misconduct. In refusing to disqualify the superintendent from

benefits for any period, this court observed that the superintendent resigned only because the board members who had the power to reelect him intended not to do so, and concluded that under such a circumstance the superintendent did not voluntarily leave his employment. Thus, *School Dist. No. 20* teaches that an employee who has engaged in no misconduct and who desires to keep his or her employment but nonetheless resigns because the employer has clearly manifested that the employment will be terminated has not left his or her employment "voluntarily," as that term is used in § 48-628(a)(1).

It is true that unlike the superintendent in *School Dist. No. 20*, Perkins made no plea for reconsideration and continuation of his employment. That, however, is not a distinguishing factor, for it is clear that because the employer's rules prevented a further extension of Perkins' probationary employment, any supplication for continued employment by Perkins would have had no more effect than did the superintendent's plea. It is also true that in *School Dist. No. 20*, improvement of the superintendent's performance was not an issue, whereas Perkins would not have been discharged if his performance had been brought to the employer's requirements. Neither, however, is this circumstance a distinguishing factor, for the evidence shows not that Perkins refused to try to improve his performance but that he tried and found he could not do what was required. Just as the superintendent was not shown to have engaged in misconduct, Perkins was not shown to have engaged in misconduct. Just as the superintendent would have been discharged at the end of the school year had he not resigned, Perkins would have been discharged upon the expiration of his extended period of probationary employment had he not resigned, not because he would not do the work, but because he could not do the work. Thus, the circumstances compel the conclusion that Perkins did not leave his employment voluntarily within the meaning of the relevant statute.

AFFIRMED.