Gwendolyn K. SHARP, Appellant,

v.

EMPLOYMENT APPEAL BOARD and Pak Fabricators, Inc., Appellees.

No. 90–1923.

Supreme Court of Iowa.

Dec. 24, 1991.

Susan E. Cameron and Frank Cal Tenuta of Legal Services Corp. of Iowa, Sioux City, for appellant.

William C. Whitten and Joe E. Smith of the Employment Appeal Bd., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

In this case we are asked to determine if Gwendolyn K. Sharp is entitled to unemployment benefits because of her separation from her employer, Pak Fabricators, Inc. (Pak). On the advice of a doctor, Sharp left her position as a meat cutter in a turkey processing plant. The dispositive question presented is whether her leaving was voluntary or involuntary. If Sharp left her position voluntarily without good cause attributable to her employer then unemployment compensation is not warranted. However, if Sharp left her employment involuntarily, then an award of unemployment compensation is warranted. The district court affirmed the commission's denial of benefits. For the following reasons we reverse the district court and remand to the agency for determination of benefits.

I. *Background Facts and Procedure.*

In late December 1989, Sharp began working as a meat cutter for Pak in Sioux City, Iowa. On January 5, 1990, Sharp visited a doctor for a regular medical examination. At that time, the doctor diagnosed her as jaundiced. Sharp telephoned her supervisor and informed her that she was being admitted to the hospital and was to see a specialist on January 10. Sharp's supervisor told her to bring a doctor's slip when she returned to work.

The jaundice symptom turned out to be the result of viral hepatitis. Apparently, Sharp did not contract the hepatitis infection while she was working at Pak. As part of Sharp's diagnoses and treatment, the doctor specifically directed that she not work with food or cleaning solvents. Where there is a known case of viral hepatitis in a community, preventive measures include the exclusion of potentially infected persons from handling food. Sharp claims that due to these directions she did not return to work.

Sharp did not call her supervisor to tell her the result of the January 10 examination. On January 12, 1990, Pak terminated Sharp's employment because she did not report or call on either January 10, 11, or 12. According to Pak's personnel assistant, Kathy Peterson, the Pak employee handbook classifies "three days with no call, no show" as job abandonment. Later, Sharp went to Pak to return her equipment and collect her back paychecks. At this time she found out that her employment had been terminated by the company. Sharp contends that she was not terminated but rather quit her employment on January 10 on the advice of her doctor.

Sharp applied for, and received, unemployment benefits. The Job Service decision that granted her benefits concluded that Sharp left her employment upon the advice of a physician because of an illness or allergy condition that was attributable to her employment. The decision concluded her leaving was not voluntary, but for good cause attributable to the employer and no disqualification from benefits was imposed. *See* Iowa Code § 96.5(1) (1989); 345 Iowa Admin.Code 4.26(6)(b) (1988). Pak appealed the Job Service decision.

The appeal was heard by an administrative law judge (ALJ) in a contested case hearing. The ALJ issued an initial decision that was later amended. The ALJ reversed the decision of Job Service and denied benefits. The ALJ made findings of fact that Sharp would be required to avoid exposure to chemicals and that if she were to contin-

ue work she "might imperil the employer's operations." The ALJ then reasoned and concluded:

> [T]he claimant's illness was in no way "attributable" to the employment. The claimant's ailment was due to circumstances totally beyond the control of the employer and not contributed to by the employer. Although the claimant was required to avoid exposure to chemicals used in the employer's operation, the fact that the claimant's condition might have been affected by such chemicals does not make the claimant's illness, in itself, "attributable to the employment." As a result the claimant's quit does not come within the regulation and disqualifies the claimant from benefits.

The ALJ directed that the payments made to Sharp in the amount of $960, based on the initial Job Service decision, be recovered.

Sharp appealed the ALJ's decision to the Employment Appeal Board (board). The board affirmed the ALJ and incorporated the ALJ's entire decision. Sharp petitioned the board for a rehearing, stating that she did not work with chemicals or cleaning solvents at Pak. She argued that the ALJ's decision was not based on evidence in the record. The board denied her request for rehearing. Sharp then sought judicial review in the district court. Iowa Code § 17A.19.

The district court affirmed the denial of benefits. However, the court affirmed the denial on grounds other than those stated in the conclusions of law portion of the ALJ's decision. The court noted that:

> There is no evidence petitioner's illness was affected by chemicals at work. In her request for rehearing the Petitioner stated she was not at the time having anything to do with cleaning solvents.... [S]ince there is no substantial evidence that anything in the Petitioner's work environment affected the Petitioner's condition, the Administrative Law Judge could not have so found.

Rather, the district court picked up on the ALJ's finding of fact that Sharp's continued employment "might imperil the employer's operations." The court concluded because Sharp had been directed by a physician not to work around food and because her hepatitis was not "attributable to her employer" she was not entitled to compensation.

Because we conclude that under this record Sharp did not voluntarily quit her employment for purposes of unemployment compensation, we reverse the decision of the district court and remand the case to Job Service for the determination of benefits.

## II. *Scope of Review.*

■ This is an appeal from an agency decision in a contested case. Iowa Code § 17A.2(2). In contested case proceedings, the agency, rather than the district court, is empowered to hear evidence and make findings of fact and conclusions of law. Iowa Code § 17A.19(7). The district court, when exercising the power of judicial review over agency action, is functioning in an appellate capacity to correct errors at law. Iowa Code § 17A.19(8). We, like the district court, are bound by the agency's findings of fact if those findings are supported by substantial evidence. We are not, however, bound by the agency's legal conclusions but may correct misapplications of the law. *Dehmel v. Employment Appeal Bd.*, 433 N.W.2d 700, 701 (Iowa 1988). Under this limited scope of review, we review the administrative record and decision.

## III. *Voluntary vs. Involuntary Quit.*

As to our review of district court decisions regarding unemployment benefits, we have stated:

> The principles that govern our analysis and review are well settled. We have said the Employment Security Law should be interpreted liberally to achieve the legislative goal of minimizing the burden of involuntary unemployment.

*Roberts v. Iowa Dep't of Job Serv.*, 356 N.W.2d 218, 221 (Iowa 1984). Furthermore, it is the declared public policy of this state that:

Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and the worker's family.... [U]nemployment reserves [are] to be used for the benefit of persons unemployed through no fault of their own.

Iowa Code § 96.2.

In this appeal, the parties have extensively argued and briefed the issue of whether Sharp voluntarily left her employment without good cause attributable to the employer. *See* Iowa Code § 96.5(1); 345 Iowa Admin.Code 4.26. The determination of whether a quit is voluntary or involuntary is a legal issue. Iowa Code § 96.5(1); 345 Iowa Admin.Code 4.25, 4.26; *Ames v. Employment Appeal Bd.*, 439 N.W.2d 669, 673–74 (Iowa 1989). In order to correct a misapplication of the law on judicial review, there must be sufficient findings made by the agency to support the correct legal conclusions. Because we find that the agency's findings of fact are sufficient in this case, we proceed to analyze the legal issue.

Our court has not directly addressed the issue of when a voluntary quit may be considered an involuntary quit for purposes of unemployment compensation. However, other courts have rendered decisions on this issue. *See generally* Annotation, *Unemployment Compensation: Eligibility Where Claimant Leaves Employment Under Circumstances Interpreted as a Firing by the Claimant but as a Voluntary Quit by the Employer*, 80 A.L.R.4th 7 (1990), and cases cited therein; Annotation, *Eligibility for Unemployment Compensation of Employee who Left Employment Based on Belief that Involuntary Discharge was Imminent*, 79 A.L.R.4th 528 (1990), and cases cited therein.

We find the reasoning of the Nebraska Supreme Court in *Perkins v. Equal Opportunity Commission*, to be persuasive. 234 Neb. 359, 451 N.W.2d 91 (1990). The general premise of the *Perkins* reasoning is that there may be circumstances in which an employee voluntarily leaves his employment but such leaving should be considered involuntary for purposes of unemployment compensation.

In *Perkins*, an employee "concluded that quitting was preferable to being discharged, and resigned before his extended period of probationary employment would have ended." 234 Neb. at 360, 451 N.W.2d at 92–93. Although the employee voluntarily left his employment, the court concluded that, for purposes of unemployment compensation, the termination was involuntary.

There is no doubt but that Perkins intentionally severed his employment relationship ... with the objective of not returning. In that general sense Perkins resigned voluntarily. It is equally clear, however, that had Perkins not resigned, he would have been discharged because he could not do the work required. That circumstance cannot be ignored when determining whether one has left his or her employment voluntarily.... [T]he circumstances compel the conclusion that Perkins did not leave his employment voluntarily.

*Id.* at 361, 451 N.W.2d at 93.

A similar situation is presented here. The agency made the following finding of fact:

[T]he claimant developed a physical ailment which was diagnosed by her health practitioners as a viral hepatitis infection which *precluded the claimant from continuing in employment with the employer because ... the claimant's work might imperil the employer's operations.* As a result of the physician's recommendation that the claimant quit employment, the claimant did quit her employment with the employer on January 10, 1990.

(Emphasis added.) As in *Perkins*, it is equally clear, and the agency found, that Sharp could not do the work required because to do so might imperil the employer's operations. We therefore conclude that,

for purposes of unemployment compensation, Sharp left her employment involuntarily. We adopt the *Perkins* analysis and thus conclude that Sharp was not disqualified for benefits.

### IV. *Preservation of Issues for Review.*

On appeal, the board suggests we hold that Sharp's termination was voluntary because she never returned to Pak to offer her services in another manner. The board also suggests that, if Sharp's termination was not voluntary, she was terminated for misconduct because she did not call or show up for three consecutive days. Because neither of these issues was addressed in the agency's decision, the issues were not preserved. There were no agency findings relative to either issue.

Similar preservation issues were raised in *Roberts v. Iowa Department of Job Service*, 356 N.W.2d 218 (Iowa 1984). In *Roberts*, a determination was made by the agency that a worker had been terminated for misconduct. The agency made no other determinations. Yet, on judicial review, the agency argued that the claimant had been terminated for misconduct or *in the alternative*, that the claimant voluntarily quit. After our court concluded that the claimant could not be disqualified for benefits on the grounds of misconduct, we summarily dismissed the agency's alternative grounds for appeal:

> We are not required to determine whether, in the circumstances of this case, Roberts in fact left her work voluntarily. A more basic obstacle confronts Job Service.... In the absence of the requisite agency finding, we have nothing to review.... [The employer] made no effort, following the filing of the appeal board's decision, to obtain an enlargement of the board's findings.

*Roberts*, 356 N.W.2d at 223.

Here, like *Roberts*, there is nothing to review. There is no agency finding of fact or conclusion of law as to whether Sharp returned to work to offer her services within the restrictions placed upon her by her doctor. There was also no finding made as to whether Sharp's unemployment was due to misconduct. Accordingly, without the agency findings, we cannot render decisions on these issues.

### V. *Disposition.*

The decision of the district court is reversed and this case is remanded to Job Service for a determination of benefits.

REVERSED AND REMANDED.