Dale E. PECK, Appellant,

v.

**EMPLOYMENT APPEAL BOARD and Eaton Corporation–Hydraulics Division, Employer, Appellees.**

No. 91–1392.

Court of Appeals of Iowa.

Sept. 29, 1992.

George W. Wittgraf of Sayre & Wittgraf, Cherokee, for appellant.

Joe E. Smith, Des Moines, for appellee Employment Appeal Bd.

Dick Montgomery of Greer, Montgomery, Barry & Bovee, Spencer, for appellee Eaton Corp.

Considered by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

The claimant, Dale Peck, began employment with the hydraulics division of the Eaton Corporation on June 17, 1976. Peck worked the first shift from midnight to 7:20 a.m. as a heavy-duty tester. Peck also worked overtime on some weekends.

On August 25, 1990, a Sunday, Peck was called in to work overtime because there was no one on duty to do heavy-duty testing. He began work at 1 a.m. and left at 5:20 a.m. as the new day shift was arriving. Peck apparently was unhappy that the day shift workers could come in two hours early and thus reduce his overtime hours.

Peck reported for work at midnight on Monday, August 26, 1990, for his regular shift. His regular work station was inoperative. Peck then looked for other job assignments. He reviewed the worksheets showing what tasks had been performed by overtime employees over the weekend. Peck then went over to his supervisor for that night, Larry Bendlin, asking what "shit jobs" were available. Peck believed the day shift workers had been given preferential treatment in overtime assignments and that only undesirable job assignments were available. Peck told Bendlin to mark him down as sick or on leave of absence because he was leaving and would take up his concerns later with the front office. Bendlin asked Peck to stay and complete other tasks, but Peck declined and left the plant.

Kurt Langel, the company's human resource manager, called Peck at home that same day and told him not to return to work on Tuesday. Langel informed him he had left work without permission and was considered to have quit voluntarily. Peck requested a meeting with management personnel and was granted a meeting the next morning. Peck's regular supervisor, Rod Revis, also called him and told him not to report for work on Tuesday.

At the meeting on Tuesday, Peck complained of the perceived preferential treatment given to other employees. Peck was excused from the meeting and was eventually sent home. Peck was informed later that day by Langel the company had decided Peck had voluntarily quit his employment.

Peck filed a claim for unemployment benefits on August 30, 1990. A job service representative determined Peck was not eligible for benefits because he quit without good cause attributable to his employer. Peck appealed, and a hearing was held. An administrative law judge (ALJ) determined Peck did not voluntarily quit but was discharged by the employer. Eaton appealed. The Employment Appeal Board reversed the ALJ. The Board concluded Peck had voluntarily quit because he left the work place without permission and did not ask for his job back at the Tuesday meeting. The Board found Peck was disqualified from receiving benefits.

Peck filed a petition for judicial review. The district court consolidated the instant case with proceedings to collect $5,018 in unemployment benefits Peck received following the ruling of the ALJ. The district court ruled that even though there was strong evidence to support both sides of

the story, there was substantial evidence to support the Board's determination and affirmed the denial of benefits to Peck. Peck has appealed.

■ Our review is limited to a determination of whether the district court made errors of law when it exercised its power of review of agency action under Iowa Code section 17A.19. *FDL Foods, Inc. v. Employment Appeal Board,* 460 N.W.2d 885, 886 (Iowa App.1990). Under section 17A.19(8), a district court may reverse or modify the agency action if such action is affected by error in the application of law or is not supported by substantial evidence in the record made before the agency when the record is viewed as a whole. *Id.* We are bound by the agency's findings of fact if those findings are supported by substantial evidence. *Sharp v. Employment Appeal Board,* 479 N.W.2d 280, 282 (Iowa 1991). We are not, however, bound by the agency's legal conclusions but may correct misapplications of law. *Id.*

■ The determination of whether a quit is voluntary or involuntary is a legal issue. *Id.* at 283. Section 96.5(1) provides that an individual may be disqualified for benefits if the individual has left work voluntarily without good cause attributable to the individual's employer. *Wills v. Employment Appeal Board,* 447 N.W.2d 137, 138 (Iowa 1989). In general, a voluntary quit means discontinuing the employment because the employee no longer desires to remain in the relationship of an employee with the employer. *Id.* To establish a voluntary quit requires that an employee intends to terminate employment. *Id.*

■ The general rule has also been stated that quitting requires an intention to terminate the employment relationship accompanied by an overt act carrying out the intent. *Local Lodge No. 1426, International Ass'n of Machinists & Aerospace Workers v. Wilson Trailer Co.,* 289 N.W.2d 608, 612 (Iowa 1980). When an employee gives a definite notice of leaving employment at a future date, the employee has quit. *Id.*

■ We determine the evidence in the present case does not show any intent by Peck to quit his employment. Although Peck left work without the employer's permission, he stated he wanted a meeting with management the next day. The evidence shows Peck intended to express a complaint about work conditions.

Furthermore, we find the employer has not sufficiently shown it had a policy that if an employee left work without permission before the end of his shift he was considered to have voluntarily quit. Peck and a fellow employee, Tim Knight, both testified they had not heard of the policy. Peck's supervisor also testified that to his knowledge the alleged policy had never been implemented previously. We also note that under the terms of the employee handbook an employee was considered to have voluntarily quit after three days of unexcused absences. The employer would now like to argue Peck should be considered to have voluntarily quit after an unexcused absence for part of one day.

We conclude Peck did not voluntarily quit his employment but was discharged by Eaton. We find the decision of the Employment Appeal Board and the district court are not supported by substantial evidence. Because of our decision, the question of whether Peck should be required to return benefits of $5,018 which he already received is moot.

We reverse the decision of the district court and remand to the Employment Appeal Board with directions to reinstate Peck's eligibility to receive unemployment compensation benefits.

REVERSED AND REMANDED.

SACKETT, J., takes no part.