Jesse W. JAMES, Appellant,

v.

SHELLER–GLOBE CORPORATION, Appellee.

No. 93–295.

Court of Appeals of Iowa.

Oct. 28, 1993.

Phillip Vonderhaar, Des Moines, for appellant.

Harry W. Dahl, Des Moines, for appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ., but decided by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

James appeals the district court's ruling affirming the industrial commissioner's decision denying his claim for workers' compensation death benefits. He contends the industrial commissioner acted unreasonably, arbitrarily, or capriciously in giving "little weight" to the testimony of an expert witness. He also argues the industrial commissioner applied the improper legal standard of proximate cause.

Rosa James died September 7, 1985, at age forty-three from an acute asthma attack. She was survived by her husband, Jesse James. Rosa worked in the Sheller–Globe plant in Keokuk during most of the 1970s and through September 6, 1985, the day before she died. On that date she accepted a voluntary layoff. At the time of her death Rosa had not been at the Sheller–Globe plant for nineteen hours.

In November 1983 Rosa had filed a petition with the industrial commissioner alleging that she suffered injury to her lungs as a result of her work. After Rosa's death, James' motion to amend the petition was granted claiming death benefits. After a hearing a deputy industrial commissioner ruled that James had failed to prove Rosa's death was proximately caused by her employment or an employment-related injury.

The deputy found that Rosa developed asthma while employed by Sheller–Globe. The deputy also found, however, that Rosa's fatal asthma attack was not induced or caused by her employment at Sheller–Globe. On appeal, the industrial commissioner adopted the deputy's findings and ruled James was not entitled to benefits because he had not met his burden of showing that Rosa's acute asthma attack arose out of or in the course of her employment.

On judicial review the district court reversed and remanded for additional findings. The court found that the commissioner had failed to consider one of Jesse's theories of recovery: that Rosa's asthma was caused by her employment and the fatal asthma attack was a direct and natural consequence of her condition. Specifically, the district court remanded the case to the industrial commis-

sioner with directions to consider two factual issues: (1) whether Rosa James' underlying asthma condition was caused by her employment with Sheller–Globe, and, if so, (2) whether the acute asthma attack which caused Rosa's death was a direct and natural consequence of her underlying asthma condition.

Sheller–Globe appealed. The court of appeals affirmed the district court and remanded with directions to the industrial commissioner. *See James v. Sheller–Globe Corp.*, 478 N.W.2d 642 (Iowa App.1991). On remand the commissioner took no additional evidence and found that James failed to prove by a preponderance of the evidence that Rosa's employment was a substantial factor in causing or aggravating Rosa's asthma. The commissioner therefore denied James' claim.

James sought a rehearing from the commissioner, but his application was denied. James sought judicial review, and the district court affirmed the commissioner's decision denying the claim. James appeals. We affirm.

■ This appeal results from a contested case state agency proceeding. *See* Iowa Code § 17A.2(2) (1991). In "contested case" proceedings, the agency, rather than the district court, is empowered to hear evidence and make findings of fact. Iowa Code § 17A.19(7) (1991). The district court, when exercising the power of judicial review over agency action, is functioning in an appellate capacity to correct errors at law. Iowa Code § 17A.19(8) (1991); *Kohorst v. Iowa State Commerce Comm'n*, 348 N.W.2d 619, 621 (Iowa 1984).

■ Our review of the district court's decision is limited to correction of errors at law. *Roberts v. Iowa Dep't of Job Serv.*, 356 N.W.2d 218, 221 (Iowa 1984). We, like the district court, are bound by the agency's fact findings if those findings are supported by substantial evidence. Iowa Code § 17A.19(8)(f) (1991). Evidence is substantial if a reasonable person would find it adequate for reaching a decision. *Peoples Memorial Hosp. v. Iowa Civil Rights Comm'n*, 322 N.W.2d 87, 91 (Iowa 1982).

■ Our scope of review was well set out in *Henry v. Iowa Dep't of Transp., M.V.D.*, 426 N.W.2d 383, 385 (Iowa 1988):

> In reviewing a district court decision on the validity of an agency action, we decide only whether the district court has correctly applied the law. The district court itself acts in an appellate capacity to correct errors of law on the part of the agency. When we review such action by the district court, we merely apply the standards of section 17A.19(8) to determine whether our conclusions are the same as those of the district court. If the conclusions are the same, we affirm; otherwise we reverse. (Citations omitted.)

Illegality is established if the board fails to act in accordance with the statute, if its decision is not supported by substantial evidence, or if its action was arbitrary, unreasonable, or capricious. *Norland v. Worth County Compensation Bd.*, 323 N.W.2d 251, 253 (Iowa 1982).

■ First, we turn our attention to determining whether the industrial commissioner's decision is supported by substantial evidence. Having carefully studied the evidence and testimony contained in the record before us on appeal, we conclude that a reasonable person could find the evidence adequate for reaching the same decision that the industrial commissioner did: "it is not probable that decedent's employment for the defendant caused her asthma."

The discussion which follows—highlighting the facts and medical evidence in the present case—supports our conclusion by illustrating that a reasonable person could reach the same result. First, it is important to note that all of the physicians who testified in this case agreed that the decedent had a genetic predisposition toward developing asthma since both her mother and father suffered from respiratory diseases (asthma and emphysema).

Rosa worked as a finish operator in department seventy-eight of Sheller–Globe between January 1981 and January 1984. This job involved making dashboards for cars and trucks. The dashboards were made in molds, and wax was sprayed or brushed onto

each dashboard so it would not stick to the mold.

Rosa first developed breathing difficulties in August of 1981, and her family physician, Dr. Beckert, diagnosed her as having acute sinusitis and tracheo bronchitis. On June 21, 1983, Rosa was evaluated by Dr. Grayson, a specialist in allergy and clinical immunology, to determine whether she was having an allergic reaction. Rosa brought to the exam four articles that she was exposed to in department seventy-eight, including: (1) a jar of wax; (2) some sponge-like plastic; (3) a jar of soap solution, and (4) a jar of solvent.

After conducting tests, Dr. Grayson concluded: (1) neither the plastic nor the soap played a part in her problem; (2) the solvent merely had an irritating effect but not a permanent one; and (3) the wax could *possibly* have aggravated her respiratory problem. Dr. Grayson reported on October 22, 1983, that Rosa was allergic to mixed molds and respiratory bacteria.

On January 23, 1984—nineteen months prior to her death—Rosa was transferred to a different department at Sheller–Globe, where she was not exposed to the wax. She worked in the new department from January of 1984 until her death. Rosa was evaluated at the University of Iowa Hospitals and Clinics as a self referral on April 22, 1985. She was told to continue working at her present job since she indicated she could tolerate the conditions as long as she remained away from what was described as the irritating chemical exposures.

Rosa continued working at Sheller–Globe without incident. On Friday, September 6, 1985, she worked her usual shift from 7 a.m. to 3:30 p.m. That afternoon Rosa requested, and was granted, voluntary leave of absence. Coworkers testified Rosa appeared physically fine when they saw her that day. However, they stated Rosa was upset the morning of September 6 because of difficulties with her husband, the claimant.

The claimant testified that Rosa awakened at 5:40 a.m. on September 7, when he got up to go to work. He did not notice anything at that time to suggest she was not well. Rosa dressed and left the house on that morning around 10 a.m. Evidence showed she had probably been cleaning with Comet, a cleanser containing chlorine, immediately prior to her death. The claimant reported that his wife was dead when he arrived home after work. An autopsy was performed by Dr. Dix on September 9, 1985, revealing the cause of death was asthma.

Following Rosa's death, several physicians reviewed the medical records of Dr. Beckert, Dr. Grayson, the University of Iowa Hospitals and Clinics, the autopsy protocol, the investigating officer's report, Rosa's work schedules, pharmacy records, and the claimant's deposition. The physicians rendered their opinions concerning the cause of death.

Dr. From, a specialist in internal medicine, stated no relationship existed between Rosa's employment at Sheller–Globe and her death. He further stated that chemicals, used both in industry and at home, such as cleaners, could precipitate asthma attacks. He also testified that stress—either psychological or social—could precipitate asthma attacks.

Dr. Ravreby, a specialist in internal medicine, also reported that Rosa's death was not directly or indirectly related to her work at Sheller–Globe. He based his opinion on the fact pattern involved in her death, stating that events prior to her death pointed to an acute exposure away from work.

Dr. Bennett, the Iowa State Medical Examiner, reviewed the records and concurred with Dr. Dix that Rosa's death was due to an acute asthma attack. Dr. Bennett opined that Rosa's death was not the direct result of exposure to irritants at Sheller–Globe.

Dr. Wooters, the Polk County Medical Examiner, reported no connection existed between Rosa's death due to asthma and exposure to a substance at Sheller–Globe approximately nineteen hours earlier. Dr. Wooters explained that in his experience asthma sufferers who develop a severe reaction do so within minutes of exposure to the offending allergen. He stated that no indication existed in Rosa's case that she was in serious to critical condition throughout the evening hours after she left work the day before she died.

Dr. Merchant, a pulmonary specialist and the director of the occupational medicine clinic, agreed that asthmatics would have an immediate reaction after an acute exposure to an irritant. He testified that, based on the history of events occurring between the time Rosa left work on September 6, 1985, and her death the next day, she was not status asthmatic, which he indicated was the situation asthmatics develop prior to experiencing an attack. He indicated a person having an asthma attack cannot lie down and sleep because they are usually up using their accessory muscles to breathe. He also agreed that fear, anxiety, and emotional concern can precipitate asthma attacks.

█ In short, the evidence in the present case indicates precisely what we stated in our previous unpublished opinion, *James v. Sheller–Globe Corp.*, No. 90–1294 (Iowa App. May 29, 1991):

> It may very well be that on remand the commissioner may find that Mrs. James' asthma condition was not caused by her employment. There is medical testimony on each side of the question. If such a finding is made, then petitioner is not entitled to benefits.
>
> *        *        *        *        *        *
>
> Recognizing there is evidence on both sides of the question, we, of course, form no opinion as to what those findings should be.

*Id.* at 7–8. We cannot say that substantial evidence does not exist to support the industrial commissioner's decision that the claimant failed to achieve his burden of proof. The fact that two inconsistent conclusions can be drawn from the evidence does not mean that one of those conclusions is unsupported by substantial evidence. *Boyd v. Iowa Dept. of Job Serv.*, 377 N.W.2d 1, 2 (Iowa App.1985); *General Tel. Co. v. Iowa State Commerce Comm'n*, 275 N.W.2d 364, 370 (Iowa 1979).

█ Next, the claimant contends the industrial commissioner's action of giving "little weight" to the opinion of Dr. Merchant was arbitrary, capricious, unreasonable, or a clearly unwarranted exercise of discretion, in violation of Iowa Code section 17A.19(8)(g). As the claimant properly points out, if the industrial commissioner does discount or reject uncontroverted expert medical testimony, he must specify his reasons for doing so. *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973). It stands to reason that the industrial commissioner has effectively performed his duty in this regard only if the reasons he specifies for discounting the expert medical testimony are valid reasons.

█ In the instant case, Dr. Merchant espoused the opinion that decedent suffered from asthma caused by workplace exposure. The claimant argues this opinion is uncontroverted. The record does not support this contention. Dr. Merchant was the only medical expert who testified that the medical evidence indicated that a *probability* of causal connection existed that Rosa's employment at Sheller–Globe was a substantial factor in causing or aggravating her asthmatic condition. The remaining medical testimony on this issue supported only a *possibility* of such connection.

None of the other medical experts' opinions reach the level of medical probability necessary to support a finding that Rosa's asthma arose out of and in the course of her employment at Sheller–Globe. In addition, all of the medical experts recognized the significance of Rosa's family history predisposing her to respiratory problems.

One of the specific reasons the commissioner found that Dr. Merchant's opinion in this case was entitled to little weight was that he did not perform independent tests, but rather relied on tests performed by Dr. Grayson. Dr. Grayson conducted tests of several materials which Rosa brought to him, and he assumed these substances were actually taken from the plant, although there is no proof in the record to indicate the accuracy of this assumption.

█ Dr. Grayson was only willing to testify to a possibility that one of the tested substances aggravated Rosa's underlying respiratory condition. Dr. Merchant based his testimony of a probability of causation on these same tests. While medical authorities certainly have a right to different interpretations of the same tests, it was clearly not

unreasonable for the commissioner to give greater weight to Dr. Grayson, the physician who performed the tests, particularly since other physicians testifying in this record agreed with Dr. Grayson. The commissioner properly considered all of the evidence and determined it fell short of establishing a probability that Rosa's employment was a substantial factor in causing or aggravating her asthmatic condition.

Finally, the claimant argues the industrial commissioner erred as a matter of law, claiming his decision applied an improper legal standard regarding proximate cause. Our review of the record shows the commissioner was well aware of the appropriate legal standard and did not hold the claimant to any higher or different standard. The commissioner concludes his opinion by stating, "Claimant failed to prove by a preponderance of the evidence that it is probable that decedent's work was a substantial factor in causing or aggravating decedent's asthmatic condition." This is the correct legal standard.

In accordance with the above discussion, we affirm the district court's ruling which affirmed the industrial commissioner's decision denying workers' compensation death benefits.

**AFFIRMED.**

DONIELSON, J., takes no part.