Sheryl A. COSPER, Appellant,

v.

**IOWA DEPARTMENT OF JOB SERVICE and Blue Cross of Iowa, Appellees.**

No. 66953.

Supreme Court of Iowa.

June 16, 1982.

Linda S. Pettit, Des Moines, for appellant.

Joseph L. Bervid, Walter F. Maley, and Blair H. Dewey, Des Moines, for appellee Iowa Dept. of Job Service.

Richard A. Stilley, Des Moines, for appellee Blue Cross of Iowa.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

This is an appeal by an unemployment compensation claimant from a district court affirmance of agency action that denied her benefits on the basis of excessive absenteeism and tardiness.

The claimant, Sheryl A. Cosper, was hired by Blue Cross of Iowa to work in its control services division on October 9, 1978. Blue Cross counseling documents dated January 5, 1979, show she had been absent several days and was warned that if she missed another 7.75 hours before January 15 she would be terminated. Nonetheless, she was promoted to data entry clerk on June 4, 1979. She was no longer required to work weekends and her salary was increased.

A counseling documentation signed by claimant on September 10, 1979, sets out the following absences and excuses:

| 6–22 | Friday | 2.50 | doctor appointment |
| 6–25 | Monday | 7.75 | boat accident |
| 6–26 | Tuesday | 7.75 | boat accident |
| 7–3 | Tuesday | 5.00 | doctor appointment, tattoo removed |
| 7–6 | Friday | 1.00 | doctor appointment, tattoo checked |
| 7–11 | Wednesday | 7.75 | sick, fever |
| 7–13 | Friday | 1.00 | doctor appointment, tattoo checked |
| 7–16 | Monday | 4.00 | doctor appointment, pregnancy |
| 7–25 | Wednesday | 2.00 | dental appointment |
| 8–6 | Monday | 4.00 | doctor appointment, pregnancy |
| 8–8 | Wednesday | 2.00 | dental appointment |
| 8–14 | Tuesday | 4.25 | went home sick |
| 8–16 | Thursday | 7.75 | home sick, fever |
| 8–22 | Wednesday | 7.75 | per doctor excuse, respiratory infection |
| 8–23 | Thursday | 7.75 | same |
| 8–24 | Friday | 7.75 | same |
| 8–27 | Monday | 7.75 | same |
| 8–29 | Wednesday | 7.75 | same |
| 9–5 | Wednesday | .25 | late from break |

This paper thus summarized "95.75 total absent hours" and further stated "[a]t any time in the future, if Sheryl's attendance falls below the competent level (7.75 hours in 2 months) probation will be waived and termination may result."

Claimant was again advised on September 20, 1979, that she had arrived one hour late on September 19, 1979, and had only two hours left "before termination may result." A counseling document dated September 27, 1979, recites she became ill at work on September 24 and was allowed to go to the doctor and "the fact that you brought a doctor's excuse, those two hours will not be counted against your remaining 2 hours." The paper stated she was counted tardy on two subsequent occasions and warned she had only ".50 hours left."

The last documentation is dated September 28, 1979. It recited the claimant had only ".50 hours left of absent time before termination would be necessary." Further,

[t]oday you came to work at 2:00. You did have a doctor's excuse from 8:30 to 12:30. This left from 7:00 to 8:30 LWOP [leave without pay] 1.50
from 1:15 to 2:00 LWOP .75
2.25 hours LWOP
Since you have exceeded your probation guideline termination is effective today.

Another memorandum of the same date submitted by Blue Cross contained a notation from a supervisor that "Sheryl Cosper came in at 1:00—said her car ran out of gas on freeway—that she had to have her paycheck to buy gas, so I gave it to her. She threw down this doctor's excuse and said Joyce [another supervisor] wants this. Returned at 2:00. J.W." The "doctor's excuse" stated "Sheryl Cosper was in the clinic this morning from 8:30 a. m.–12:30 p. m. for testing to rule out the possibility of diabetes in her pregnancy."

By handwritten notes on the counseling documents, in her papers filed with the Iowa Department of Job Service, and in her testimony, the claimant protested Blue Cross's absent-time computations. She asserts she had doctor excuses for most of her absences and that near the end of her employment she had a supervisor's consent to change her hours from 7 a. m. to 3:30 p. m. to 8 a. m. to 4:30 p. m. to meet the schedule of another person with whom she was commuting. She assumed that because she would be working the same number of hours it would be "okay." Nonetheless, she alleges she was counted one hour tardy per day and the extra hour at the end of the day was counted as overtime.

Claimant testified that on the day of her discharge she had a supervisor's consent to go back and retrieve her car from the freeway. She further testified that she never took any time from work without letting her employer know about it first; that she brought back a doctor's excuse for each time she "was in the clinic." At the department hearing she offered a doctor's statement showing she had been seen in his office for prenatal care on June 19, 22, 25, July 16, August 16, 23, 24, 27, September 24, 28, and October 31, 1979. Blue Cross's evidence did not go beyond the counseling documents from its files, which are indefinite on the question whether her absences were excused. Merlin Lee, Blue Cross's manager of employment, testified "[w]e have no comment about excused absences."

The claimant was denied relief by the department's claims representative, hearing

officer, appeal board, and by the district court. Further, she is met here by a contention raised in district court that there was and is no jurisdiction to review the appeal board's decision. We first dispose of this threshold issue.

I. *Did district court have review jurisdiction?*

██ The department contends district court had no jurisdiction to review because claimant's application for rehearing, made to the appeal board, was filed too late. It reasons the denial of the rehearing application therefore was void and could not operate to toll the thirty-day period for seeking judicial review. *See* §§ 96.6(8), 17A.19(3), The Code.

The appeal board decision was filed January 11, 1980. The application for rehearing had to be filed "within twenty days." § 17A.16(2), The Code; *see Cunningham v. Iowa Department of Job Service*, 319 N.W.2d 202, 204 (Iowa 1982); § 96.6(5)–(6), The Code; 370 I.A.C. § 6.4(2)(f). Thus the last day for filing was January 31, 1980. Claimant's application was dated January 31, 1980, but was stamped by the appeal board as being "received" on February 1, 1980. However, the board's "Decision on Rehearing" shows the date of the application to be January 31, 1980. We find this, coupled with the fact the board must have considered the application timely when it ruled on it, substantiates claimant's contention that she mailed the application on January 31, 1980. The department does not cite its own rule 370 I.A.C. subsection 4.35(1), which in relevant part states:

Except as otherwise provided by statute or by department rule, any payment, appeal, application, request, notice, ... submitted to the department *shall be considered* received by and *filed* with the department:

a. If transmitted via the United States postal service or its successor, on the date it is mailed as shown by the postmark, or in the absence of a postmark, the postage meter mark of the envelope in which it is received; or if not postmarked or postage meter marked or if the mark is illegible, on the date entered on the document as the date of completion.

(Emphasis added.) *Cf.* 370 I.A.C. § 6.4(1)(b) (mailing deemed filing for appeal to appeal board). We find that this rule is within the authority granted the department by subsection 96.6(6), The Code, and it controls in this situation. Because the department did not submit the envelope, the relevant date is that "entered on the document as the date of completion," January 31, 1980. The application was filed on time. The subsequent time sequences resulted in the petition for judicial review satisfying the subsection 17A.19(3) thirty-day filing time requirement. The district court had, and this court consequently has, jurisdiction to review the department's action.

II. *Was claimant's alleged absenteeism and tardiness "misconduct" disqualifying her from unemployment benefits under subsection 96.5(2), The Code?*

Claimant's petition for judicial review alleges the department's decision was in violation of statutory and regulatory provisions in that she "was denied benefits even though she was not guilty of misconduct as defined by law." *See* § 17A.19(8)(a), The Code. She further alleged the department's finding that she was guilty of misconduct was not supported by substantial evidence. *See id.* § 17A.19(8)(f).

██ Our statutes provide a disqualification for, but do not define, "misconduct." Subsection 96.5(2) in relevant part provides:

If the department finds that the individual has been discharged for *misconduct* in connection with the individual's employment:

a. The individual shall be disqualified for benefits until the individual has worked in and has been paid wages for insured work equal to ten times the individual's weekly benefit amount ....

(Emphasis added.) The department has interpreted misconduct as:

a *deliberate* act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such *willful or wanton disregard* of an employer's interest as is found in *deliberate* violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

370 I.A.C. § 4.32(1)(a) (emphasis added). In *Huntoon v. Iowa Department of Job Services*, 275 N.W.2d 445, 447–48 (Iowa), *cert. denied*, 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979), we found that this rule "accurately reflects the intent of the legislature." In that decision we further wrote:

Misconduct connotes volition. A failure in good performance which results from inability or incapacity is not volitional and is thus not misconduct.

*Huntoon*, 275 N.W.2d at 448. *See generally* 81 C.J.S. *Social Security and Public Welfare* § 222(b), at 429–33 (1977). The last sentence in rule 4.32(1)(a) makes it plain that "mere inefficiency, unsatisfactory conduct [or] failure in good performance as the result of . . . incapacity" is not disqualifying misconduct.

The department also adopted rule 4.32(7), which tersely states:

*Excessive absenteesim.* [sic] Excessive absenteeism is an intentional disregard of the duty owed by the claimant to the employer and shall be considered misconduct.

The phrase "excessive absenteeism" does not appear in section 96.5, The Code ("Disqualification for Benefits"). "Absenteeism" is defined in *Webster's Third New International Dictionary* as a "continual interruption of attendance." It is apparent, however, that a claimant might be excessively absent because of incapacitating illness or other reasonable grounds for which she was excused, or she might be excessively absent by reason of a willful or wanton disregard of an employer's interest. If the former, the absenteeism would not be misconduct as is made clear by the last sentence in the rule 4.32(1)(a). If the latter, she would be disqualified for misconduct under the first part of the rule. *See Clark v. Iowa Department of Job Service*, 317 N.W.2d 517, 518 (Iowa Ct.App.1982). The troublesome feature of rule 4.32(7) (excessive absenteeism) is that it is stated as a result, not a definition. It does not distinguish between excused and unexcused absences. Still more troublesome in this case is the failure of the department to make that distinction in its rulings, despite claimant's testimony and continued contentions that her absences were excused. Of course her testimony may not have been believed, but there is no finding on that fact.

The claims representative made the following findings:

On 09–28–79 you were discharged for repeated tardiness in reporting for your work after being warned.

Benefits are withheld . . . .

The hearing officer made the following conclusion of law:

Excessive tardiness and absenteeism by an employee is a willful and wanton disregard for the employer's interest and does come within the meaning of misconduct as used in the law.

No supporting authority was cited. *But cf.* § 17A.16(1), The Code ("Each conclusion of law shall be supported by cited authority or by a reasoned opinion."). The appeal board made the following conclusion of law:

Excessive tardiness by an employee is a willful and wanton disregard for the em-

ployer's interest and does come within the meaning of misconduct as used in the law.

No supporting authority was cited. It is clear the department was applying the rule of law found in rule 4.32(7). None of the department's findings distinguish between unexcused and excused absences. Upon review we cannot determine whether it held plaintiff's absences were excused or unexcused.

*Ball v. Iowa Department of Job Service*, 308 N.W.2d 54 (Iowa 1981), is a misconduct opinion in which we noted the initial disqualification was made for "excessive unexcused absenteeism." *Ball*, 308 N.W.2d at 54. Although *Ball* is not otherwise relevant here, it indicates the department has used the excused-unexcused distinction. In *Clark*, 317 N.W.2d at 518, the court of appeals noted specifically that the case involved "unexcused absences."

The general rule in other jurisdictions is that "mere" absenteeism as a consequence of which an employee is discharged does not constitute disqualifying misconduct. 81 C.J.S. *Social Security and Public Welfare* § 223 (1977); *see Holt v. Iowa Department of Job Service*, 318 N.W.2d 28, 29–30 (Iowa Ct.App.1982). The rule also has been stated as follows:

> Under statutes providing that unemployment compensation benefits are to be denied or delayed to one whose unemployment results from discharge for wilful misconduct, it has been held or recognized, as a general principle, that persistent or chronic absenteeism or tardiness, at least where the absences are without notice or excuse, or the tardiness is without reasonable excuse, or the absence or tardiness is continued in the face of warnings by the employer, constitutes wilful misconduct within the meanings of the statutes, precluding payment of benefits upon discharge.

Annot., 58 A.L.R.3d 674, 685 (1974).

The Vermont definition of misconduct is almost identical with the Iowa definition. In *In re Therrien*, 132 Vt. 535, 537, 325 A.2d 357, 358 (1974), the Vermont Supreme Court noted and applied the distinction drawn in the above general rules:

> Absenteeism which may well be grounds for discharge because of its adverse effects upon the employer is not necessarily misconduct. Absences in good faith, for good cause, with appropriate notice, are not misconduct. They may be grounds for discharge, but not for penalty. Substantial disregard for the employer's interest is not shown, and this is essential to a finding of misconduct.

We are not bound by the department's interpretations of the law. *American Home Products Corp. v. Iowa State Board of Tax Review*, 302 N.W.2d 140, 142 (Iowa 1981). Although in *Huntoon* we approved its general rule interpreting misconduct, we do not approve its rule relating to "excessive absenteeism" because it draws no distinction between excused and unexcused absences.

We have said the Employment Security Law should be interpreted liberally to achieve the legislative goal of minimizing the burden of involuntary unemployment. *Brumley v. Iowa Department of Job Service*, 292 N.W.2d 126, 129 (Iowa 1980); *Smith v. Iowa Employment Security Commission*, 212 N.W.2d 471, 472–73 (Iowa 1973); *see* § 96.2, The Code. So interpreted, we hold excessive absences are not misconduct unless they are unexcused.

■ Whether claimant's absences were excused was a contested but unresolved issue in this case at the department level, and the district court summarily affirmed the department's action without explanation. Therefore we do not know which rule the district court applied on its review. With the controversy in this posture, we do not believe that in a judicial review of administrative action we are free to apply to the facts a legal rule that may not have been applied by the department or the district court. Accordingly, we reverse and remand to district court with directions to vacate its prior judgment and to remand the appeal to the department to make appropriate findings relating to claimant's contentions her

absences were excused, and to apply the rule laid down in this opinion.

█ Upon remand, the question may arise as to which party shall carry the burden to show misconduct. In other circumstances we have applied the general rule that "[t]he burden of proof is upon a claimant seeking unemployment compensation." *Brumley*, 292 N.W.2d at 128 (quoting *Davoren v. Iowa Employment Security Commission*, 277 N.W.2d 602, 603 (Iowa 1979)). This rule has been applied to require the claimant to show that the termination of employment was not a "voluntary quit," which is a section 96.5 ground for disqualification. *See Walles v. Iowa Employment Security Commission*, 219 N.W.2d 539, 539–40 (Iowa 1974); *Moulton v. Iowa Employment Security Commission*, 239 Iowa 1161, 34 N.W.2d 211 (1948). The department's rule 4.32(4), however, imposes the burden of proving misconduct on the employer. In relevant part the rule provides:

> Allegations of misconduct or dishonesty without additional evidence shall not be sufficient to result in disqualification. If the employer is unwilling to furnish available evidence to corroborate the allegation, misconduct cannot be established.

*See* Note, *The Iowa Employment Security Act (Unemployment Compensation)*, 11 Drake L.Rev. 125, 135 & n.68 (1962). This concept tracks with the general civil rule that imposes the burden of proof on an issue upon the party who would suffer loss if the issue were not established. Iowa R.App.P. 14(f)(5); *see Town of Marne v. Goeken*, 259 Iowa 1375, 1380, 147 N.W.2d 218, 222 (1966). The same principle prevails generally in other jurisdictions in situations involving alleged disqualification from receiving unemployment compensation. *Arizona Department of Economic Security v. Magma Copper Co.*, 125 Ariz. 23, 26, 607 P.2d 6, 9 (1980); *Lasher v. Mueller Brass Co.*, 62 Mich.App. 171, 177–78, 233 N.W.2d 513, 516 (1975); *Kleinwachter v. Department of Employment Services*, 305 Minn. 568, 570 n.2, 234 N.W.2d 822, 824 n.2 (1975); *Therrien*, 132 Vt. at 537, 325 A.2d at 358.

We reverse and remand for further proceedings in conformance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.