511 So.2d 1309 (1987)
Clay JACKSON, Appellant,
v.
ADMINISTRATOR OF DEPARTMENT OF EMPLOYMENT SECURITY OF the STATE OF LOUISIANA and Bastrop Skid Company, Appellees.
No. 18917-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
*1310 Hunter, Scott, Blue, Johnson & Ross by Louis G. Scott, Monroe, for appellant.
State of La., Dept. of Labor by James A. McGraw, Baton Rouge, for appellee, Ad'r of Employment Sec.
Rankin, Yeldell, Herring & Katz by Stephen J. Katz, Bastrop, for appellee, Bastrop Skid Co.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
This is a suit for unemployment compensation. Clay Jackson was fired from his job at Bastrop Skid Company where he had worked approximately one year as a laborer, making $4.45 an hour. When the claims adjudicator ruled him disqualified, he pursued the appeals process through a referee and the board of review. They affirmed his disqualification. He followed with suit in district court, where the board's decision was affirmed. He now appeals, urging three specifications of error. We affirm.
The factual findings of the appeals referee, before whom a hearing was conducted, may be summarized as follows. Until his firing on October 2, 1985, Jackson had worked about a year at Bastrop Skid, averaging 30 to 40 hours per week. During his year of employment, he had received numerous warnings about his work and attitude. Mr. Pardue, the plant manager, reported that on January 23, 1985, Jackson was "talked to" about improving his production *1311 at the nailing table. Jackson did not recall this "warning"; Mr. Pardue explained that this had been a general pep talk warning addressed to all employees. On March 19, Jackson cut his right thumb on the ripsaw. This required sutures, but did not cause him to miss any work. The employer claimed the accident resulted from Jackson's unsafe operation of the equipment; Jackson contended it was the machine that was unsafe. On April 5, he received an oral warning for failure to wear hearing protection in the resaw room. On April 30, he received an oral warning for failure to check the thickness of the lumber at the outfeed of the resaw. On June 18,[1] he received an oral warning about careless operation of the forklift. Jackson acknowledged receiving all these warnings and offered no explanation of his conduct. Mr. Pardue also testified that Jackson received an oral warning on September 26 about loafing on the job, and loud and excessive talking. Jackson denied receiving this warning.
The following day, September 27, Jackson asked for time off to go on a job interview in Monroe. Mr. Pardue agreed to let him have a few hours in the morning, but requested that he return by a certain time. Jackson called in to say he was "stuck in traffic" and could not make it back to Bastrop in time. Mr. Pardue told him if he was going to be that late, he might as well take the whole day off, but it would be counted as an unexcused absence.
On October 2, the day of the firing, there was a confrontation between Jackson and the assistant manager, Mr. Sistrunk, over Jackson's refusal to work when assigned. Mr. Sistrunk did not testify, but according to Mr. Pardue, Jackson was told to make some "tops" and refused; he was then told to collect some nails, at which point he muttered an obscenity at Mr. Sistrunk; moments later, Jackson was observed away from his work station, not working. Mr. Sistrunk reported this to Mr. Pardue; they talked with Jackson, decided he could not be reformed and fired him immediately.
In support of its claims, Bastrop Skid offered the testimony and written statements of three of Jackson's co-workers. These workers, while not specific on dates and times, described a long pattern of poor work performance and an unsuitable attitude on Jackson's part. Emanuel Lewis reported seeing Jackson warned about not putting the block boxes in place. Bennie Jordan said that Jackson would not stay at his job station, but walked over to other workers' stations every 15 or 20 minutes and talked to the other workers; this was why, Jordan felt, Jackson had been fired. Frank McCurley said that Jackson exhibited a bad attitude on the job, griping and complaining a lot, talking to other workers too much and having a lot of "down" time. McCurley had also seen Mr. Pardue reprimand Jackson.

SPECIFICATIONS NOS. 1 & 2
By his first two specifications of error, Jackson claims the evidence was insufficient to support a finding of disqualification and that the trial court improperly considered hearsay evidence.
A claimant shall be disqualified from benefits if he has been discharged for misconduct connected with his employment. LSA-R.S. 23:1601(2). Misconduct is interpreted to mean an act of wilful or wanton disregard of the employer's interest, a deliberate violation of the employer's rules, disregard of standards of behavior that the employer has a right to expect from his employee, or negligence in such a degree or recurrence as to manifest culpability, wrongful intent or evil design. Jenkins v. Blache, 471 So.2d 909 (La.App. 2d Cir. 1985); Horns v. Brown, 243 La. 936, 148 So.2d 607 (1963).
The employer bears the burden of proving that the discharge resulted from disqualifying conduct. This issue is primarily factual and is left to the determination of the referee and the board of review. LSA-R.S. 23:1634. The factual findings must be based on legal and competent evidence. Evans v. State Dept. of Emp. Sec., 292 So.2d 265 (La.App. 2d Cir.1974); Caldwell *1312 v. Gerace, 378 So.2d 1045 (La.App. 2d Cir.1979). In administrative hearings, however, the usual rules of evidence do not apply and hearsay is generally admissible. LSA-R.S. 23:1631; Gardere v. Brown, 170 So.2d 758 (La.App. 1st Cir.1964).
Jackson contends that all the evidence regarding the events of his last day of work was hearsay. Admittedly, the assistant manager, who was a party to the confrontation, did not appear at the hearing. However, the assistant manager immediately reported Jackson's conduct to Mr. Pardue, who testified. Witnesses Lewis and Jordan corroborated that Jackson was not doing the work assigned, and this was the real reason for the firing, even though the referee somewhat inartfully mentioned the "confrontation" as well. We cannot agree the entire case against Jackson was hearsay.
Furthermore, Jackson did not contradict the employer's version of events. We recently reiterated the rule that hearsay evidence is not competent to overcome an employee's direct, contradictory testimony. Credit v. Whitfield, 488 So.2d 1064 (La. App. 2d Cir.1986), and citations therein. Jackson did not, when given the opportunity to speak, deny his repeated failure, and ultimate refusal, to perform the work assigned. Thus on the record as it stands, there is no evidence that would leave us to disbelieve the employer's version of events. Added to this is the fact that Mr. Pardue's testimony was corroborated by that of Lewis and Jordan. The evidence was competent to support the administrative findings of fact.
This leads directly to the question of sufficiency. Jackson has cited considerable jurisprudence that holds that inadequate job performance is not ground for disqualification. See, e.g., Jacobs v. Gerace, 381 So.2d 935 (La.App. 2d Cir.1980); Simmons v. Gerace, 377 So.2d 407 (La.App. 2d Cir. 1979). However, the record presents us with more than simple incompetence. Jackson was reprimanded on three prior occasions for not following the employer's regulations pertaining to safety and production; and once for loafing on the job. He was fired for not doing the work assigned, although the reprehensible confrontation was also surely a factor. Repeated violations in the face of warnings amount to misconduct. Jackson v. Doyal, 198 So.2d 469 (La.App. 2d Cir.1967); Fouts v. Delta Southern Co., 273 So.2d 909 (La. App. 1st Cir.1973); Williams v. Adm'r, 474 So.2d 544 (La.App. 3d Cir.1985). Because these violations were so frequent and because Jackson exhibited an attitude of refusing to work as assigned, his acts can be considered deliberate violations. Bowman v. State Ofc. of Emp. Sec., 403 So.2d 825 (La.App. 2d Cir.1981); Harris v. Adm'r, 480 So.2d 886 (La.App. 2d Cir.1985), writ denied 481 So.2d 1338 (La.1986). The evidence is sufficient to support a finding of misconduct connected with the employment. These specifications do not present reversible error.

SPECIFICATION NO. 3
By his final specification, Jackson claims he was denied due process in the administration of his claim. He cites three alleged official acts of unfairness. None of these claims, however, has any support in the record, as even a cursory review will show.
He first alleges that the notice of the administrative hearing did not adequately advise him of the nature of the ground of his disqualification. The notice, he claims, stated the cause as failure to perform the work assignment as expected, but that evidence at the hearing was adduced to prove a confrontation, previous warnings and a poor work attitude. Contrary to Jackson's assertion, the notice states:
The issue before the referee is the correctness of the following: The claimant was discharged from his employment because of his failure to perform the work assignment as expected. He continued to neglect his duties after warnings. His discharge was for misconduct connected with the employment. (R.S. 23:1601(2)) R. p. 17.
This notice specifically mentions the failure to do the assigned work. The vast *1313 majority of the evidence on appeal was offered to support this issue. The notice also plainly mentions the repeated warnings. It is unfortunate that the referee was not more specific in her findings; she summarized the evidence and ended with reference to the "confrontation." Nevertheless, given the overall nature of the evidence and the uncontroverted proof that refusal to work was what caused the scene, we feel that the notice was sufficient. See LeBlang v. Ofc. of Emp. Sec., 425 So.2d 910 (La.App. 4th Cir.1983); LSA-R.S. 23:1629. The underlying cause of the ultimate confrontation was the genuine ground of disqualification. Under these circumstances, the notice adequately advised Jackson of the issue.
Jackson's second point of contention reiterates the first and is without merit.
Jackson finally claims he was denied the opportunity to confront the witnesses. This contention is so remote from the facts that it is almost frivolous. Jackson posed questions to Mr. Pardue, the principal witness against him, R. p. 37-39. He was stopped only when he attempted to probe into personal matters that were clearly beyond the pleadings. He questioned Emanuel Lewis, R. p. 41. He declined to question Bennie Jordan when asked, R. p. 43. Admittedly, he did not question Frank McCurley, but during McCurley's testimony, Jackson objected to introducing McCurley's letter. R. p. 47. In the exercise of his right, Jackson was not thorough and comprehensive, but he cannot complain of having been deprived of the right to crossexamine the witnesses against him. This argument is meritless.
For the reasons expressed, the judgment appealed from is affirmed. Costs will not be assessed. LSA-R.S. 23:1692.
AFFIRMED.
NOTES
[1] The appeals referee erroneously listed this date as June 10.