557 So.2d 985 (1990)
Fernando E. CABEZAS
v.
ADMINISTRATOR, DIVISION OF EMPLOYMENT SECURITY, et al.
No. 89-CA-0572.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1990.
*986 Cesar Vasquez, Murray, Braden, Gonzalez & Richardson, New Orleans, for plaintiff.
James A. McGraw, Denise A. Nagel, Frank T. Scott, Jr., Ollivette E. Mencer, V. Broussard Guillory, Sandra A. Broussard, Office of Employment Sec., Baton Rouge, David Israel, Pamela Alison Sweeney, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendants.
Before SCHOTT, C.J., and CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff-Appellant, Fernando E. Cabezas, "Cabezas" appeals the trial court's judgment denying his request for unemployment compensation benefits. We reverse the trial court's judgment.
Cabezas was hired by defendant, Hyatt Corporation, "Hyatt", on November 5, 1981, as an Internal Kitchen Steward. Cabezas is a native of Nicaragua and does not speak English. Hyatt was aware of these facts and always used an interpreter when communicating with Cabezas. On January 19, 1988, after concluding his regular shift (4 pm-12 am), Cabezas indicated that he would not come to work the following day, that he was sick, and that he would see a doctor.
Approximately January 21, 1988, he had his sister-in-law call Hyatt to provide notice of his illness. Cabezas also sent a doctor's note to his employer on January 22, 1988 which stated that he was suffering from arthritis and flu. During the following week, Cabezas' supervisor, Ms. Zanini, telephoned him and told him to report to the personnel office. When Cabezas reported to the personnel office he was discharged for failing to give notice of absence in accordance with the employer's policy. Cabezas was an employee with Hyatt for six years.
Cabezas filed a claim for unemployment compensation benefits with the Office of Employment Security "Agency". The Agency determined that available information did not show that Cabezas' discharge was for misconduct connected with his employment and therefore, assessed no disqualification from unemployment benefits. Hyatt appealed.
On appeal to the Appeals Tribunal, the Administrative Law Judge "appeals referee" ordered that the agency's determination, assessing no disqualification from unemployment compensation benefits, be reversed and that Cabezas be disqualified from receiving benefits as of January 19, 1988. Cabezas appealed to the Louisiana Board of Review. The Board ordered that the decision of the appeals referee be affirmed. From this decision Cabezas sought judicial review pursuant to La.R.S. 23:1634. After reviewing the factual findings of the appeals referee and the Louisiana Board of Review, and considering the legal principles involved, the trial court affirmed the *987 decision of the Board of Review and entered judgment for Hyatt.
Cabezas argues that the trial court erred in its judgment because 1) the Board of Review's decision was not based on sufficient, competent evidence and 2) his action did not amount to misconduct.
Cabezas argues that the only testimony offered to support the charge that he failed to use proper call-in procedures was hearsay testimony.
At the administrative hearing Hyatt provided testimony by Mr. Chris Elliott, an Employee Relations representative, and Ms. Marilyn Zanini, an Executive Steward. Ms. Zanini, one of Cabezas' supervisors, was not personally present. Her testimony was received over the telephone. Cabezas could not observe her demeanor, nor could he review the records she relied upon to render the facts as alleged by her.
When asked by the appeals referee if he had first-hand knowledge of Cabezas' failure to use proper call-in procedures, Elliott testified:
Elliott: He would not have reported to me, but I, I'mI investigated this situation as to what happened.
Judge: Okay. So you did speak to people who did have first-hand knowledge of it?
Elliott: That's correct.
Hearsay is any out of court statement offered to support the truth of the matter asserted. Cabezas relies on Romano v. Whitfield, 535 So.2d 12 (La.App. 4th Cir. 1988). In Romano this court upheld the proposition first articulated in Payne v. Antoine's Restaurant, 217 So.2d 514 (La. App. 4th Cir.1969):
By all rules of fairness and law he was entitled to confrontation and the right of cross-examination of his accuser.
Cabezas also cites January v. Administrator, Division of Employment Security, 155 So.2d 250 (La.App. 2d Cir.1963) which holds that an employer does not discharge its burden of proving a disqualifying cause by hearsay evidence or by ex parte statements in the administrative proceedings.
It is not necessary to hold that the sole testimony offered by Hyatt to prove a disqualifying cause was hearsay or ex parte statements however, because we find that Cabezas' actions did not amount to misconduct.
Hyatt argues that Cabezas was properly disqualified from receiving unemployment compensation benefits because he was discharged for misconduct connected with his employment. La.R.S. 23:1601(2)(a). The appeals referee found that the employer's written policy states that an absent employee must notify his supervisor at least two hours before reporting time. It states that notice may be given to the hotel operator if the employee is unable to reach his supervisor or another manager in his department. It further states that absences of more than one day must be reported daily and that each employee is responsible for proper notification to his supervisor.
A signed copy of this statement in Spanish was submitted to show that Cabezas was informed of this policy but Cabezas maintained that it was not his signature on the statement. Cabezas did admit, however, that the policy concerning notice of absence was explained to him in Spanish by the employer. Cabezas further maintained that he left work ill on his last day of work and told a supervisor that he would not report on the following day. Cabezas acknowledged that the supervisor did not speak Spanish and that he tried to explain this with gestures and by saying such English words as he knew. Cabezas was unable to identify the supervisor.
Hyatt offered no witnesses that could rebut Cabezas' defense that he informed his immediate supervisor that he was ill and would not be coming in because he planned to see the doctor. Mr. Elliott said that there was no supervisor who met the description offered by Cabezas. He suggested that Cabezas may have told someone under the false impression that that person was a supervisor.
Ms. Zanini testified that as Executive Steward she was Cabezas' direct supervisor. However, it seems that Ms. Zanini is a daytime employee and is generally not *988 present for a large part of the shift that Cabezas works which can extend until 1 a.m. Cabezas therefore reports to other supervisors. Cabezas' first language is Spanish. Even on those occasions when he sees Ms. Zanini, who is not Spanish-speaking, another supervisor is present to interpret. Because of this situation it is not unlikely that Cabezas was confused about to whom he should report.
Ms. Zanini also denies that she received a telephone call from Cabezas' sister-in-law on the 21st of January stating that he would be absent from work due to illness. Cabezas testified that his previous supervisor, Ms. Zanini's predecessor, told him that he should call in personally when he was ill. He explained that because he did not speak English he would have his sister-in-law call in for him. Ms. Zanini may not have been aware of this agreement since she was a more recent employee relative to Cabezas. Cabezas' sister-in-law, Lilliam Ramirez de Gonzalez, filed an affidavit testifying that she made this phone call on January 21, 1988, to the best of her recollection.
The Louisiana Supreme Court has strictly construed the definition of misconduct as follows:
... the "misconduct" must have resulted from willful or wanton disregard of the employer's interest, from deliberate violation of the employer's rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees.
Charbonnet v. Gerace, 457 So.2d 676, 678 (La. 1984); Jackson v. Administrator of the Department of Employment Security, 511 So.2d 1309, 1311 (La.App. 2d Cir.1987); and Weber v. Whitfield, 511 So.2d 831 (La. App. 5th Cir.1987).
"The burden of proving misconduct of such grievous character to disqualify the claimant from receiving benefits under the act is upon the employer." Payne v. Antoine's Restaurant, 217 So.2d 514, 517 (La. App. 4th Cir.1969). In the case at bar, the employer has failed to meet its burden of proof.
The call-in procedures, as outlined in the employer's handbook, provided in part, that "if an employee fails to report for work without calling for three consecutive days, it will be necessary for Hyatt to remove that individual from the payroll ..."
Whether a violation of the employer's rule, resulting in discharge warrants the withholding of unemployment compensation benefits must be determined, not by the employer's rules, but by the statute. Robinson v. Brown, 129 So.2d 45 (La.App. 2d Cir.1961). According to the employer, absence from the employment for three days without notice warrants dismissal. In this case, the employer received a doctor's note stating that Cabezas would be absent from work for a week. As such notice was received by the employer on the second day of Cabezas' absence, such action on the part of Cabezas can not be deemed a deliberate violation of the employer's interest sufficent to deny Cabezas unemployment compensation benefits.
Hyatt cites the cases Sledge v. Whitfield, 531 So.2d 291 (La.App. 2d Cir.1988) and Collins v. Whitfield, 525 So.2d 1201 (La. App. 5th Cir.1988) as controlling these facts. We disagree. Unlike the instant case these claimants made no good faith efforts to comply with their employers' policies.
In Sledge the facts clearly establish that the claimant possessed the requisite "wrongful intent" in failing to timely notify his employer of his absence from work. Prior unexcused and unexplained absences and prior warnings from the employer were a strong indicator of intentional conduct. In addition, his manager learned by attempting to contact him that claimant's excuse for missing work was a subterfuge. Collins involved a claimant who was discharged after she left the office one morning for an afternoon doctor's appointment. She did not discuss her situation with either the controller or the company president who were on the premises. She did not report to work as scheduled on the next work day. It was found that claimant failed to give timely notice, or any notice whatsoever that she would be absent from work. In light of her knowledge that it was an employment requisite that proper *989 and timely notice be given, her conduct constituted as a matter of law, obvious and open disregard of her employer's interest.
The decision of the trial court in the instant case was not correct as a matter of law. Moreover, as the Supreme Court stated in Charbonnet, supra at 678, "[b]ecause of the beneficial purpose of unemployment compensation, the term misconduct should be construed so as to favor the awarding of benefits rather than disqualification...."
The Louisiana Employment Security Law is remedial in nature and, as such, should be interpreted by the court to extend its benefits as far as possible within the bounds imposed by express legislative restrictions. Craighead v. Administrator, 420 So.2d 688, 689 (La.App. 2d Cir. 1982), writ denied, 422 So.2d 154 (1982).
REVERSED.
SCHOTT, C.J., dissents.
SCHOTT, Chief Judge, dissenting:
When he was employed, plaintiff was given a copy of the employee handbook which included the policy regarding attendance. This required the employee who was unable to report to work, to notify his supervisor or if unavailable, the hotel operator, at least two hours before starting time of the reason for his absence and the time he expected to return. It further provided "absences of more than one day must be reported daily unless other arrangements have been made with your Supervisor." Plaintiff acknowledged that this policy was explained to him in Spanish which was his native tongue and stated that he understood it. In fact the previous October he was given an official warning for being absent and failing to call.
The Administrative Law Judge made these findings of fact: His last day of work was January 19, 1988; he did not return to work on January 21 and he did not notify his supervisor. On Friday, January 22, he did not give notice of his absence but someone delivered a doctor's note dated January 21 to the job site stating that plaintiff would be unable to return to work for one week. Marilyn Zanini, the Executive Steward tried to reach plaintiff without success on Monday, January 25. She did contact him on January 26 and told him to report to the personnel office. He did so on January 27 at which time he was suspended. After an investigation he was discharged effective January 19.
Plaintiff violated the same company rule he had recently violated and for which he was given a formal warning. He offered no evidence to excuse or even explain his failure to call in and say he could not report for duty. I agree with the Administrative Law Judge that his misconduct was such as to warrant disqualification of benefits. I would affirm the judgment of the trial court, the Board of Review, and the Administrative Law Judge.