**Amber I. GABORIT, Petitioner–Appellant**

v.

**EMPLOYMENT APPEAL BOARD, and Sabre Communications Corporation, Respondents–Appellees.**

No. 07–0773.

Court of Appeals of Iowa.

Nov. 15, 2007.

William J. Niebel of Iowa Legal Aid, Sioux City, for appellant.

Anita M. Garrison, Employment Appeal Board, Des Moines, for appellee.

Sabre Communications Corporation, pro se.

Considered by SACKETT, C.J., and VAITHESWARAN and BAKER, JJ.

BAKER, J.

Amber Gaborit appeals from the district court ruling that upheld the Employment Appeal Board's denial of her claim for unemployment compensation benefits. Because we find her final absence was excused as a matter of law, we reverse.

## I. Background and Facts

Amber Gaborit was hired by Sabre Communications Corporation on a part-time basis on May 23, 2005. She became a full-time order entry assistant on September 26, 2005. In both May and September of 2005, she signed an acknowledgment of receipt of Sabre's attendance

policy. The policy states in pertinent part that employees are expected to attend work as scheduled, that absences must be reported at least thirty minutes prior to the start of a scheduled shift, and that "[e]xtended absences that last 8 consecutive hours or less cannot be excused unless accompanied by a doctor's note or other form of verification" (although it is unclear from the record whether Sabre in fact regularly required employees to provide a doctor's excuse for such absences to be excused).

Both parties testified that Gaborit was absent from work on several occasions due to illness and various personal reasons, e.g., childcare issues, sick children, moving. No evidence was presented, however, regarding specific dates or reasons for Gaborit's absences. Sabre's Human Resources Manager, Maria Harder, testified that she was unable to provide the exact dates of actual unexcused absences because she did not bring Gaborit's attendance records to the unemployment appeal hearing. Gaborit testified that she sometimes obtained prior approval for these absences, and she admitted that she had received verbal warnings from her manager about her attendance, e.g., she was warned to get a back-up for her childcare.

On April 11, 2006, Gaborit received her first written disciplinary warning, which stated in part, "any unexcused time off in the future may result in additional disciplinary action up to and including termination of employment. All future time off for illness will require a Doctor's note to be considered excused." On May 15, 2006, Gaborit was absent from work due to illness and properly reported her absence to Sabre. Gaborit did not see a doctor. When she returned to work on May 16, she was allowed to work her shift. According to Harder, they "waited until the end of the day to ask Amber whether or not she was able to provide us a doctor's note." Because she did not provide a doctor's note, Gaborit was discharged from employment.

Gaborit filed a claim for unemployment insurance benefits. An Iowa Workforce Development representative found her ineligible because her discharge was for "violation of a known company rule." Gaborit appealed. The administrative law judge found that, although she was absent from work due to illness, she was disqualified for benefits because "she did not provide the medical documentation as stated in the company policy." Gaborit appealed to the Employment Appeal Board (Board), who affirmed the decision of the administrative law judge (with one member dissenting). Gaborit's application to the Board for rehearing was denied. Gaborit filed a petition for judicial review. The district court affirmed. Gaborit appeals, contending she is entitled to unemployment benefits because her final absence was excused as a matter of law and because the agency's determination that she committed work-related misconduct was not supported by substantial evidence.

## II. Merits

 Our review is governed by the Administrative Procedure Act. Iowa Code ch. 17A (2005); *Acuity Ins. v. Foreman*, 684 N.W.2d 212, 216 (Iowa 2004). We review the district court's decision by applying the standards of section 17A.19 to agency action to determine if our conclusions are the same as those reached by the district court. *Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 95 (Iowa 2004). We are bound by the agency's findings of fact if those findings are supported by substantial evidence when the record is reviewed as a whole. *Sharp v. Employment Appeal Bd.*, 479 N.W.2d 280, 282 (Iowa 1991). We are not, however,

bound by the agency's legal conclusions; we may correct misapplications of the law. Iowa Code § 17A.19(10)(c). Gaborit contends she is entitled to unemployment benefits because her final absence was excused as a matter of law. We agree.

■ Unemployment statutes "should be interpreted liberally to achieve the legislative goal of minimizing the burden of involuntary unemployment." *Cosper v. Iowa Dep't of Job Serv.*, 321 N.W.2d 6, 10 (Iowa 1982). Pursuant to Iowa Code section 96.5(2), an individual is disqualified for unemployment compensation benefits if "the individual has been discharged for misconduct in connection with the individual's employment."

> "Misconduct" is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct [is] limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees.

Iowa Admin. Code r. 871–24.32(1).

> Excessive unexcused absenteeism is an intentional disregard of the duty owed by the claimant to the employer and shall be considered misconduct *except for illness* or other reasonable grounds for which the employee was absent and *that were properly reported to the employer.*

Iowa Admin. Code r. 871–24.32(7) (emphasis added); *see also Cosper*, 321 N.W.2d 6, 10 (quoting with approval *In re Therrien*, 132 Vt. 535, 325 A.2d 357, 358 (1974) ("Absences ... for good cause, with appropri-

ate notice, are not misconduct. They may be grounds for discharge, but not for penalty. Substantial disregard for the employer's interest is not shown, and this is essential to a finding of misconduct.")).

We are bound by the Employment Appeal Board's findings that Gaborit was absent on May 15, 2006, due to illness and that she notified Sabre in advance of her absence. *See Sharp*, 479 N.W.2d at 282 (noting we are bound by the agency's findings of fact that are supported by substantial evidence). Were it not for the doctor's note requirement, the absence would have been excused for purposes of unemployment benefits.[1]

To determine whether Gaborit's last absence, for which she did not present the required doctor's note, constituted misconduct, we must first determine whether our unemployment laws define "unexcused" or whether the employer may graft additional requirements to define what is "unexcused." We hold that our legislature, through the Iowa Code and the Iowa Administrative Code, defines an unexcused absence for unemployment compensation eligibility purposes.

■ The issue is not whether Sabre had reasonable grounds for discharging Gaborit. "What constitutes misconduct justifying termination of an employee, and what is misconduct which warrants denial of unemployment benefits are two separate decisions." *Brown v. Iowa Dep't of Job Serv.*, 367 N.W.2d 305, 306 (Iowa Ct.App. 1985). "Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits." *Budding v. Iowa Dep't of Job Serv.*, 337 N.W.2d 219, 222 (Iowa Ct.App.1983). The issue is whether

---

1. We do not define "properly reported" under the Iowa Administrative Code as the Board found that Gaborit properly notified her employer and this finding was not contested by the employer.

those grounds constituted misconduct in connection with her employment such that she can be denied unemployment benefits. *See Beaty v. City of Idaho Falls,* 110 Idaho 891, 719 P.2d 1151, 1152 (1986).

Other states have similarly determined that their unemployment statutes, as opposed to the employer's rules, define misconduct. *See, e.g., id.* (refusing to hold that "any discharge that is reasonably based on the employer's own rules will always result in a denial of ... employment benefits"); *Simmons v. Dep't of Employment,* 99 Idaho 290, 581 P.2d 336, 338 (1978) ("Violation of an employer's rule is not, per se, misconduct."); *City of Wichita v. Employment Sec. Bd.,* 13 Kan.App.2d 729, 779 P.2d 41, 45 (1989) (holding claimant who had one sip of beer while on duty, in violation of employer's work rule, did not commit misconduct within meaning of statute); *Cabezas v. Adm'r, Div. of Employment Sec.,* 557 So.2d 985, 988 (La.Ct. App.1990) ("Whether a violation of the employer's rule, resulting in discharge warrants the withholding of unemployment compensation benefits must be determined, not by the employer's rules, but by the statute."); *Moore v. Maine Dep't of Manpower Affairs, Employment Sec. Comm'n,* 388 A.2d 516, 519 (Me.1978) ("denial of benefits based on misconduct should be determined not by the employer's rules, but rather by the provisions of the statute"); *Fitzgerald v. Globe–Union, Inc.,* 35 Wis.2d 332, 151 N.W.2d 136, 140 (1967) ("While the violation of a work rule may well justify the discharge of an employee, such a violation does not necessarily amount to misconduct for unemployment compensation purposes.").

Because the Iowa Code and the Iowa Administrative Code define unexcused absences for unemployment compensation purposes, our remaining question is whether Gaborit's absence was unexcused within the meaning of the statutes. Because the statutes exclude properly reported absences due to illness from the definition of unexcused absences, and Gaborit was ill and properly reported her absence, we hold that her final absence was excused as a matter of law. Gaborit is not disqualified for benefits due to misconduct.

The Board cites *Warrell v. Iowa Dep't of Job Serv.,* 356 N.W.2d 587, 590 (Iowa Ct. App.1984), to support its contention that the April 11, 2006 written warning "was, in essence, a last chance agreement." In *Warrell,* we held that, where an employee had been previously warned about misconduct and placed on probation, and the employee did not comply with the conditions of probation, the employee "had long since forfeited rights that a nonprobationary employee has." *Warrell,* 356 N.W.2d at 590. We disagree with the Board that the same principle is applicable in this case. The facts in *Warrell* involve an employee who "had been suspended three times, placed on probation three times, and was on probation when the final offensive conduct took place." *Id.* In contrast, Gaborit had not been suspended or placed on probation. She had been verbally counseled regarding her attendance, and had received only one written warning prior to her termination. Further, the employer could not even identify how often Gaborit had been absent, or the dates of her previous absences, or whether the employer considered them to be excused or unexcused. We find the principles of *Warrell* inapplicable to the facts of this case.

Because we hold that Gaborit is entitled to unemployment benefits because her final absence was excused as a matter of law, we need not reach the issue of whether the agency's determination that she committed work-related misconduct was supported by substantial evidence.

**REVERSED.**

VAITHESWARAN and BAKER, JJ., concur.

SACKETT, C.J., dissents.

SACKETT, C.J. (dissenting).

I respectfully dissent. I would affirm the agency and the district court. The district court concluded that:

> Given the nature of the April 11th, 2006, disciplinary warning notice there can be no doubt that any absences for illness after April 11th without an accompanying doctor's note would not be tolerated by the employer. Whether or not Ms. Gaborit felt the doctor's note requirement was reasonable, she testified that she knew on May 15, 2006, that she needed a doctor's note in order for her absence to be considered as excused. Clearly, there is substantial evidence that Ms. Gaborit's failure to produce a doctor's note was intentional and constituted substantial misconduct which, given the context of her actions, is serious enough to warrant denial of benefits. The agency's application of the law to the facts is not irrational, illogical, or wholly unjustifiable. Nor is the agency's decision unreasonable, arbitrary, capricious, or an abuse of discretion.

I agree with the district court on this issue and do not find that the May 15 absence was excused as a matter of law.