# IN THE COURT OF APPEALS OF IOWA

No. 16-0551
Filed February 8, 2017


**TAMARA TIMMONS,**
        Petitioner-Appellant,

**vs.**

**EMPLOYMENT APPEAL BOARD**
**and VON MAUR, INC.,**
        Respondents-Appellees.
_____


Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.


An employee appeals the district court's decision that affirmed the employment appeal board's denial of her claim for unemployment benefits. **REVERSED AND REMANDED.**


Janelle L. Swanberg of Iowa Legal Aid, Davenport, for appellant.

Richard Autry, Employment Appeal Board, Des Moines, for appellees.


Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

Tamara Timmons appeals the district court's decision that affirmed the Iowa Employment Appeal Board's (EAB) denial of her claim for unemployment benefits. Timmons asserts the EAB erred in finding she committed misconduct when her final absence from work was due to illness, which is not considered an unexcused absence as a matter of law. She also contends there is a lack of substantial evidence to support the conclusion she was terminated for not producing a note from a physician. Finally, she asserts there was no showing of the intent needed to prove misconduct. The EAB asks us to affirm the district court's judicial review decision on the basis that substantial evidence supports the conclusion Timmons committed misconduct or, alternatively, on the ground that Timmons voluntarily quit.

## I.    Background Facts and Proceedings

Timmons started her employment with Von Maur in August 2013.[1] In the fall of 2014, Timmons was granted a leave of absence due to a medical condition, and the leave lasted from November 17, 2014, until January 2, 2015. Upon Timmons's request, the leave was extended another two weeks to January 19, 2015, and Timmons's medical provider signed a return-to-work certification indicating that on January 20, 2015, Timmons was able to return to work with no restrictions. Timmons returned to work that day and stated she was able to perform her normal duties. However, on January 28, 2015, Timmons experienced adverse effects of her medication and left work early, leaving a

---

[1] Timmons worked in the company's e-commerce fulfillment center with regularly scheduled hours of Monday through Friday, 3:00 p.m. to 11:00 p.m.

message for Dawn Shaw in Von Maur's human resources department. The next day, January 29, Timmons called Shaw again and discussed the possibility of obtaining an additional one- or two-week leave of absence. Shaw instructed Timmons not to come to work that day but to wait to hear back after Shaw consulted with the corporate office. Shaw contacted Timmons later that day informing her no further leave would be granted and Timmons's employment was terminated.

Von Maur's termination form indicates Timmons was terminated on January 29, 2015, for "health" reasons. It further stated Timmons received three warnings[2] and a hand-written note on the form provided, "Tammy was on an approved leave of absence through 1-19-15. She has requested additional leave time which she does not qualify for. Therefore we are separating employment."

Following her termination, Timmons requested unemployment benefits, and an initial agency decision awarded her benefits, finding: "Our records indicate you were dismissed from work on 1/28/15 for excessive absences. However, your absences were due to illness and were properly reported. Under these circumstances there is no misconduct." Von Maur appealed this decision, and a telephone hearing was held with an administrative law judge (ALJ) on April 3, 2015. The ALJ issued its decision on April 6, 2015, denying Timmons unemployment benefits and concluding:

> The last incident, which brought about the discharge, constitutes misconduct because the employer had granted [Timmons] an initial leave and then had granted an additional two

---

[2] The record contains no other testimony or evidence regarding these three "warnings," and the employer testified during the telephone agency hearing to the contrary, stating Timmons had not been given any warnings prior to termination.

weeks of leave based on [Timmons's] request. At the end of that two-week period, [Timmons] presented a document to employer allowing her to return to work with no restrictions. [Timmons] then presented no further medical documentation when she requested additional leave. Employer at that time could only rely on the documents they had. The administrative law judge holds that [Timmons] was discharged for an act of misconduct and, as such, is disqualified for the receipt of unemployment insurance benefits.

Timmons appealed this decision to the EAB, which on May 15, 2015, summarily affirmed the decision of the ALJ, adopting the ALJ's written decision as its own. Timmons then filed a petition for judicial review of the EAB's ruling with the district court. After a hearing, the district court issued its decision on February 24, 2016, affirming the EAB's decision to deny Timmons unemployment benefits. Timmons now appeals the district court's decision.

## II.     Scope and Standard of Review

Iowa Code chapter 17A (2015) governs our review of the EAB's decision to award or deny unemployment benefits. *See Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 184 (Iowa 2016). On judicial review of an agency's decision, the district court acts in an appellate capacity, and our review of the district court's decision is to determine if the district court correctly applied the law. *Id.* at 184– 85. "We must apply the standards set forth in section 17A.19(10) and determine whether our application of those standards produce[s] the same result as reached by the district court." *Id.* at 185 (alteration in original) (citations omitted). "Because of the widely varying standards of review, it is 'essential for counsel to search for and pinpoint the precise claim of error on appeal.'" *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010) (citation omitted).

In this case, Timmons asserts the agency erred by concluding her final absence from work amounted to misconduct, disqualifying her from receiving unemployment benefits. A challenge to the agency's ultimate conclusion is a challenge to the agency's application of law to the facts of the case and is reviewed under section 17A.19(10)(m) to determine whether the decision is "illogical, irrational, or wholly unjustifiable." *See* Iowa Code § 17A.19(10)(m); *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006). We also look to see whether the agency "abused its discretion by, for example, employing wholly irrational reasoning or ignoring important and relevant evidence." *Meyer*, 710 N.W.2d at 219 (citing Iowa Code § 17A.19(10)(i), (j)).

Timmons also challenges the agency's factual conclusion that she was fired due to her failure to provide a doctor's note. Substantial evidence challenges are reviewed under Iowa Code section 17A.1(10)(f), and substantial evidence has been defined as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1).

### III. Misconduct

Iowa Code section 96.5(2) provides that an individual is disqualified from receiving unemployment benefits "[i]f the department finds that the individual has been discharged for misconduct in connection with the individual's employment." Misconduct is defined under the Iowa Administrative Code rule 871-24.32(1)(a) as:

a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

The same administrative code rule provides that excessive unexcused absenteeism is considered misconduct because it is "an intentional disregard of the duty owed by the claimant to the employer" but it is not considered misconduct if the absence is due to "illness or other reasonable grounds for which the employee was absent and that were properly reported to the employer." Iowa Admin. Code r. 871-24.32(7).

In this case, the evidence produced at hearing established Timmons was on leave for a personal medical condition during the two months that preceded her termination. She obtained a return-to-work certification from her medical provider at the end of the leave and returned to her position at Von Maur working for approximately one week. She then experienced a side-effect of her medication on January 28, and left a voicemail message for Shaw, who was employed in Von Maur's human resources department, that she was leaving her shift earlier that day. Timmons then called Shaw the next day to ask if an additional leave of absence was available. Shaw told Timmons not to report to

work that day until Timmons heard back from Shaw. Later that same day, Shaw called to inform Timmons no further leave would be granted and she was terminated.

At the agency hearing, Von Maur, represented by Shaw, did not contest the final absence from work on January 28 was due to Timmons's illness—the side-effects she was experiencing from her medication. Nor does Von Maur dispute this issue on judicial review. There was also no dispute that Timmons reported the absence to Von Maur through Shaw on the date in question. Thus, under Iowa Administrative Code rule 871-24.32(7), this final absence is not considered misconduct because it was due to illness and was properly reported to the employer. *See Gaborit v. Emp't Appeal Bd.*, 743 N.W.2d 554, 558 (Iowa Ct. App. 2007) ("Because the statutes exclude properly reported absences due to illness from the definition of unexcused absences, and Gaborit was ill and properly reported her absence, we hold that her final absence was excused as a matter of law.").

The EAB's decision focused on Timmons's failure to provide Von Maur with further medical documentation when she requested the additional leave on January 29. On appeal, the EAB asserts "[i]t was not wholly unjustifiable for the Board to conclude that [Timmons's] repeated failure to update her health status while insisting that she was not capable of working, despite her full release, constituted misconduct." We first note the impracticality of Timmons obtaining such medical documentation in the short time between leaving work early in the evening of January 28 and being terminated by Shaw on January 29. Also, there is no evidence in the record that Von Maur's policies required medical

documentation whenever an employee was absent due to illness or that Von Maur ever requested Timmons provide such documentation. The EAB claims Timmons repeatedly failed to update her health status, but the record does not demonstrate even one request from the employer to Timmons for updated medical documentation in relation to Timmons's request on January 29 for an additional leave of absence. In addition, even if we could imply such a requirement, this court has already rejected an employer's attempt to graft an additional requirement of a doctor's note for the employee's absence to be considered excused. *See id.* at 557; *Irving*, 883 N.W.2d at 185 (concluding no deference would be afforded to the agency's definition or construction of the term "misconduct" because the term was "not alien to the legal lexicon" and was "not complex or beyond the competency of courts"). "'What constitutes misconduct justifying termination of an employee, and what is misconduct which warrants denial of unemployment benefits are two separate decisions.' 'Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits.'" *Gaborit*, 743 N.W.2d 557 (citations omitted). We thus agree with Timmons that her final absence from work does not constitute misconduct under the applicable Iowa Code and Iowa Administrative Code provisions because the undisputed evidence established the absence was due to illness and the absence was properly reported to her employer. *See* Iowa Admin. Code r. 871-24.32(7); *see also Gaborit*, 743 N.W.2d 558.

At oral argument EAB also faults Timmons for not submitting proof at the agency hearing of the medical necessity of her absence from work. However, it

was not Timmons's burden to prove she did not commit misconduct at the agency hearing. *See Lee v. Emp't Appeal Bd.*, 616 N.W.2d 661, 665 (Iowa 2000) ("The employer bears the burden of proving a claimant is disqualified for benefits because of misconduct."). Also, the misconduct must be the reason for the termination from employment; it is not established by the employee's actions, or inactions, after termination. *See* Iowa Code § 96.5(2) (noting an individual is disqualified from unemployment benefits if the individual "has been *discharged* for misconduct in connection with the individual's employment" (emphasis added)). We conclude, in light of the controlling statutory and case law to the contrary, the agency's decision that Timmons committed misconduct is "illogical, irrational, and wholly unjustifiable." *Id.* § 17A.19(10)(m).

## IV. Voluntary Quit

The EAB requests that we consider an alternative ground to affirm the agency's decision by concluding Timmons voluntarily quit her position at Von Maur. *See Infante v. Iowa Dep't of Job Serv.*, 364 N.W.2d 262, 266 (Iowa Ct. App. 1984) (considering an alternative ground to establish misconduct that neither the hearing officer nor appeal board reached because "our scope of review encompasses a review of the entire record and is not limited to the agency's findings"). Iowa Code section 96.5 provides an individual is disqualified from unemployment benefits "[i]f the individual has left work voluntarily without good cause attributable to the individual's employer, if so found by the department."

The EAB asserts the Iowa Administrative Code provides that a failure to return following a leave of absence is considered a voluntary quit. *See* Iowa

Admin. Code r. 871-24.22(2)(j) ("If the employee-individual fails to return at the end of the leave of absence and subsequently becomes unemployed the individual is considered as having voluntarily quit and therefore is ineligible for benefits."). However, the facts in this case show Timmons did return to work following her employer-approved leave of absence, worked approximately one week, and then requested an additional leave of absence because she claimed she began to experience side-effects of her medication. Timmons left her shift early on January 28, informing Von Maur of her departure with a voicemail message.[3] The following day, before her work shift began, Timmons again contacted Von Maur to discuss her situation and a request was made for additional leave. Timmons was informed not to start her shift at work on January 29, until she heard back from Shaw. When Shaw contacted Timmons later that day, Timmons was informed she was terminated because there was no further leave available to accommodate her health condition.

The termination form entered into evidence at the hearing supports Timmons's testimony. It states January 28 was the last day Timmons worked and January 29 was the day she was terminated, and it stated, "Tammy was on an approved leave of absence through 1-19-15. She has requested additional leave time which she does not qualify for. Therefore we are separating employment." The employer did not offer any other evidence to contradict Timmons's testimony that would have supported a conclusion Timmons failed to return from her leave of absence.

---

[3] The record does not contain any information as to the timing of Timmons's departure from her shift or the timing of the voicemail message she left for Shaw on January 28.

The EAB claims it was not illogical to disqualify Timmons from unemployment benefits when Timmons did not take the necessary steps to show Von Maur the medical justification to extend her leave. However, as stated above, there is no indication in the record Von Maur requested Timmons provide such documentation. Timmons was terminated because no further leave was available, not because she failed to provide the medical documentation to support her most recent request. This case is clearly distinguishable from the case EAB cites as support for its alternative claim in its brief—*Spence v. Iowa Employment Security Commission*, 86 N.W.2d 154 (Iowa 1957). In *Spence*, a worker left his shift due to a back injury, never requested a leave of absence from the employer, failed to return to work several days after he was released from the doctor's care, and did not provide any doctor certification to account for his absence from work. 86 N.W.2d at 155–56. The court determined there was ample competent evidence to warrant denying Spence unemployment benefits. *Id.* at 157.

Here, Timmons became ill due to her medication after she had returned to work from her employer-approved leave of absence. She informed the employer of the situation and requested an additional leave of absence but was terminated when no further leave was available. We conclude, based on the facts of this case, it would have been illogical to deny Timmons unemployment benefits based on a conclusion that she voluntarily quit her position.

Because we agree an absence due to illness is not considered an unexcused absence as a matter of law and the evidence does not support the conclusion that Timmons voluntarily quit, we reverse the district court's judicial

review decision and remand to the agency with direction to award Timmons unemployment benefits.

**REVERSED AND REMANDED.**